UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JUDGE ENGELMAYER

| AL HIRSCHFELD FOUNDATION, | |
|---|---|
| Plaintiff, | 16 Civ. **16 CV 4135** |
| -against- | |
| THE MARGO FEIDEN GALLERIES LTD. and MARGO FEIDEN, | |
| Defendants. | |

## COMPLAINT

Plaintiff Al Hirschfeld Foundation (the "Foundation"), by its attorneys Cowan, DeBaets, Abrahams & Sheppard LLP, complains and alleges against defendants The Margo Feiden Galleries Ltd. ("MFG") and Margo Feiden ("Feiden") (MFG and Feiden, collectively, the "Defendants") as follows:

### NATURE OF THE CLAIMS

1.  This action arises out of Defendants' willful copyright infringement, false affiliation and false designation of origin, and unlawful continued possession of the Foundation's property.

2.  Such conduct has caused – and continues to cause – damage to the Foundation's ability to promote the legacy of legendary artist Al Hirschfeld and to fulfill its mission to promote interest in the theater and dramatic arts.

3.  Despite the Foundation's best efforts to put a stop to Defendants' infringements of the Foundation's intellectual property and to regain possession of valuable, unique, and irreplaceable works of art wrongfully being withheld by Defendants, Defendants have refused

to cease their unlawful activities and return the property that rightfully belongs to the Foundation. Accordingly, in light of the dire circumstances created by Defendants and the palpable risk that Defendants will continue, unabated, to cause harm to the Foundation's reputation and goodwill and impair the value of the Foundation's economically and historically valuable works, the Foundation calls upon the Court to provide immediate relief from Defendants' injurious actions.

## JURISDICTION AND VENUE

4. This action asserts claims arising under the Copyright Act, 17 U.S.C. § 101 *et seq.*, the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and New York state law. This Court has jurisdiction over the Foundation's claims pursuant to 28 U.S.C. §§ 1331, 1338, and 1367(a).

5. This Court has personal jurisdiction over Defendants because they reside in this District, have committed tortious acts within this District and are causing injury within this District.

6. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) & (2) and 1400(a).

## THE PARTIES

7. The Foundation is a Delaware not-for-profit corporation that is authorized to do business in New York, and is based in New York

8. MFG is a New York corporation with its principal place of business at 15 East 9th Street, New York, New York 10003.

9. Feiden is an individual residing at 15 East 9th Street, New York, New York 10003.

## FACTUAL BACKGROUND

### Al Hirschfeld and Establishment of the Foundation

10. Al Hirschfeld ("Hirschfeld") is one of the most important and celebrated figures in contemporary drawing and caricature. His unique style of drawing – almost exclusively using pure line in black ink – is widely recognized and has greatly influenced countless artists, illustrators, cartoonists, and animators.

11. Over the course of Hirschfeld's nine-decade career, he both chronicled and defined much of popular culture, particularly through his drawings of Broadway productions, Hollywood celebrities, and numerous figures from the world of music. His drawings were published in virtually every major publication of the Twentieth Century; indeed, his relationship with *The New York Times* spanned 75 years.

12. Alive during the birth of television, Hirschfeld captured television's first half-century, creating more covers for *TV Guide* than any other artist.

13. When the U.S. Postal Service released a series of postage stamps depicting Hirschfeld's renditions of famous American comedians in 1991, the Postal Service included Hirschfeld's name on the stamp booklet, an honor that had not been previously accorded to any artist

14. Hirschfeld's drawings are included in numerous public collections, including the Metropolitan Museum of Art, the Whitney Museum of American Art, the Harvard Theatre Collection, the Library of Congress, and the National Portrait Gallery.

15. At age 92, Hirschfeld was declared a Living Landmark by the New York City Landmarks Commission in 1996 and at age 96, a Living Legend by the Library of Congress in 2000.

16. His work for the theater was recognized by two lifetime achievement Tony Awards and, in 2003, a Broadway theater was renamed in his honor. His work continues to be valued and valuable, with pieces selling for amounts in the tens of thousands of dollars.

17. Pursuant to the terms of his Last Will and Testament, Hirschfeld left all of his drawings and works of art that were owned by him at the time of his death to the Foundation. Hirschfeld also transferred to the Foundation all right, title, and interest in and to any and all copyrights in such works.

18. The Foundation's mission is to promote interest in the theater and dramatic arts by supporting not-for-profit museums, libraries, theaters, and similar cultural institutions.

19. The Foundation fulfills its mission, in part, by presenting exhibitions of Hirschfeld's art works at museums and other venues, and by donating or lending Hirschfeld's artworks to such organizations.

20. Since Hirschfeld's death in January of 2003, the Foundation has curated exhibitions and installations of Hirschfeld's work, exploring a variety of themes, at venues around the world; created a curriculum with the New York City Board of Education for students K-12, and established an online catalogue of all of Hirschfeld's art.

**The Prior Litigation and Settlement Agreement with Defendants**

21. In the early 1970s, Feiden and MFG began representing Hirschfeld as Hirschfeld's agent for the sale and licensing of his artworks in the New York metropolitan area.

4

Feiden and Hirschfeld confirmed this representation in a February 14, 1974 consignment agreement, and the relationship continued for more than 25 years.

22. In May of 2000, however, Hirschfeld brought a lawsuit against both Feiden and MFG, alleging that Feiden had refused to return drawings, records, and documentation that belonged to Hirschfeld, and that Feiden had breached the parties' consignment agreement and had breached her fiduciary duty to Hirschfeld (the "Prior Lawsuit").

23. According to the complaint filed by Hirschfeld in connection with the Prior Lawsuit, the dispute found its origins in the late 1990's. The Academy of Motion Picture Arts and Sciences had engaged archivist David Leopold, who worked with Hirschfeld, as curator in connection with a Hollywood-based exhibition titled "Hirschfeld's Hollywood." Publication of an exhibition catalogue and book were planned to accompany the exhibition.

24. Leopold and Hirschfeld enjoyed a close working relationship, with Leopold visiting Hirschfeld's studio on a weekly basis as his archivist. Leopold also curated numerous exhibitions of Hirschfeld's work at venues such as the Library of Congress and the Victoria and Albert Museum in London.

25. After Feiden contacted the Academy directly, making numerous accusatory, threatening, and untrue statements, the Academy postponed the exhibition.

26. Hirschfeld's Prior Lawsuit also claimed that Feiden had engaged in "an intentional, reckless and malicious campaign of harassment and intimidation, transcending all bounds of decency" evidenced by Feiden's statement to Hirschfeld that "he would spend the rest of his life in court if he tried to recover his artwork."

27. Given Hirschfeld's age and the stress of litigation, Hirschfeld elected to settle the dispute.

5

28. Accordingly, in September of 2000, the parties executed a complex and extensive settlement agreement to govern the parties' relationship going forward (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1.

29. As Hirschfeld's successor-in-interest, the Foundation is bound by the terms of the Settlement Agreement.

### Feiden's Disregard of the Settlement Agreement and Violations of the Foundation's Copyrights

30. The Foundation and Defendants have continued to work together since the execution of the Settlement Agreement. However, in recent months the relationship has become untenable as a result of Defendants' troubling and unlawful conduct, exacerbated by Feiden's erratic and unpredictable behavior.

31. Not only are Defendants in breach of multiple provisions of the Settlement Agreement, they are willfully and baselessly withholding valuable property that belongs to the Foundation despite numerous requests for the property's return, and, as the Foundation has recently learned, are actively infringing the Foundation's copyright rights in several significant Hirschfeld works.

32. Moreover, the Foundation has also recently learned that Feiden has failed to maintain Hirschfeld's works with proper care and attention to their preservation, storing and displaying the works (to the extent they have not been misplaced or otherwise lost) in a cluttered, dusty East Village townhouse.

33. The Foundation therefore has come to realize that, unfortunately, Defendants continue to be a hindrance, rather than supporting partner, in preserving and developing Hirschfeld's artistic legacy and promoting the goals of the Foundation.

*Operation of a Gallery*

34. While the Settlement Agreement requires Feiden to maintain a gallery "substantially similar in quality" to Feiden's previous gallery located at 699 Madison Avenue in New York, New York, (Ex. 1 at 12), Feiden instead operates MFG from her East Village townhouse.

35. Feiden's home is located in an area of Manhattan that is zoned for residential use only. Upon information and belief, Feiden is holding her home out as a professional gallery space where interested patrons can view and purchase Hirschfeld works.

36. Upon arriving at the townhouse, however, visitors are presented with litter and other cast-aside items that have been discarded at the townhouse's front entrance. Visitors are not welcomed by a professional employee of the Gallery, but rather must be led up a flight of stairs, through a door, and down a hallway before arriving at a room where a Gallery employee may be found.

37. The Gallery space appears tremendously disorganized and more like a maze than professional space for the display of valuable artwork. The rooms in the Gallery are filthy and cluttered, bursting with objects unrelated to Hirschfeld. Random trinkets, tiny bird statues, and other items are strewn throughout and make it difficult to move around.

38. Moreover, Hirschfeld's works are not handled with proper care. It is readily apparent, for instance, that a Martha Graham print on display is slipping out of its mat and requires immediate attention.

39. While several original drawings stored in the hallway racks are wrapped in Mylar, others are improperly kept in unfastened art bags.

40. Additionally, the Gallery's ostensible professionals lack the proper training for handling the works. Visitors are permitted to handle original, and irreplaceable, drawings, despite the works' fragility. Consistent with this glaring inattention to preservation and protection of the drawings, Gallery employees themselves do not handle the drawings in a delicate manner. *Id.* at 15-16.

### *Defendants' Refusal to Return Consigned Works*

41. The Settlement Agreement provides that the relationship between the Foundation and MFG shall be construed in accordance with the New York Arts and Cultural Affairs Law (the "Arts Law"), specifying that all Foundation works in Defendants' possession, custody, or control are on "consignment" within the meaning of the Arts Law. (Ex. 1 at 14).

42. Pursuant to the terms of the Settlement Agreement, Defendants are permitted to possess a limited number of original Hirschfeld works, to be held on consignment. Defendants were permitted to retain a maximum of 250 consigned original works; Defendants are currently in possession of 265 consigned original works (the "Original Works"). (Ex. 1 at 3).

43. Starting in January of 2016, the Foundation requested that MFG make available for pickup ten of the Original Works in MFG's possession based on the parties' consignment arrangement for use in an upcoming exhibition.

44. Under the Settlement Agreement, the Foundation enjoys "unrestricted access to, and the right to possess," all unsold works in Defendants' possession, provided the Foundation provides notice to Defendants of no fewer than ten business days. (Ex. 1 at 18). The Foundation requested that the ten Original Works be made available for pick-up within ten business days. When informed that seven of these Works were unavailable, the Foundation requested an additional twenty-five Works.

45. Despite numerous e-mails and phone calls over the course of many weeks following up on the request for the return of the twenty-eight Original Works, Feiden remained non-communicative.

46. When Feiden did finally respond to the Foundation in March, she used the opportunity to air her long-held grievances with the Foundation rather than to address the Foundation's simple request for the return of the Foundation's valuable property. Feiden's e-mail began by inexplicably referencing a "one-armed paper hanger," and ended with the quote, "All that is necessary for the triumph of evil is that good men do nothing."

47. Feiden refused to return the Foundation's twenty-eight Original Works; rather, the works remain in Feiden's possession despite the Foundation's demand for their return by several successive deadlines, all of which Feiden ignored.

48. Feiden's obstructionist behavior is consistent with her response to previous requests; in December of 2013, for instance, the Foundation similarly requested the return of five Hirschfeld drawings to be used in connection with a Hirschfeld retrospective at the Huntsville Museum of Art.

49. Feiden refused to return all five works, and the Foundation ultimately abandoned its request.

50. While the retrospective went on as planned, it lacked the five drawings requested from Defendants, impeding the Foundation's ability to best document and present Hirschfeld's artistic portfolio and legacy.

*Defendants' Copyright Infringement*

51. Pursuant to the Settlement Agreement, the Foundation retains "sole proprietorship" of copyright rights in all of Hirschfeld's works. (Ex. 1 at 16.)

9

52. While the Settlement Agreement authorizes Feiden to produce a certain number of limited-edition prints of Hirschfeld's works each year, the prints must be approved by the Foundation in writing. Ex. 1 at 8.

53. In December of 2015, Feiden requested the Foundation's authorization to reproduce a Hirschfeld work entitled "Bob Hope," along with another Hirschfeld work titled "Carol Burnett," as a new print edition in connection with a proposed distribution agreement with Time Life.

54. On February 2, 2016, and again on February 28, 2016, the Foundation responded to this notice, informing Feiden that she did not have the permission or approval of the Foundation to publish any prints with Time Life, and that it was concerned that the subjects of the proposed print editions, particularly "Bob Hope," were very similar to existing limited edition prints.

55. Notwithstanding the Foundation's disapproval, on March 14, 2016, Feiden responded that, "By the time of your email, February 2, the Time Life deal had been completed."

56. "Bob Hope" continues to be available for purchase from Time Life's website as part of a purportedly "exclusive" Time Life edition. The "Bob Hope" print is identical to an existing limited edition print published in 1988; while the former currently retails for $5,000, the latter is priced at $199.99.

57. Moreover, Feiden has, without the Foundation's prior approval or knowledge, created one-off reproductions of many of Hirschfeld's works, including specifically, the work entitled "Annie Hall" (together with the above-mentioned "Bob Hope" drawing, the "Infringed Works").

58. MFG displays and offers for sale these reproductions on its website, characterizing the Works as "giclees," which are print-on-demand, digital reproductions of works printed on inkjet printers.

59. Giclees are typically printed on lesser-quality paper, are entirely absent of the collecting value of prints made during Hirschfeld's lifetime, and, more generally, lack the stature of traditional limited edition lithographs or etchings.

60. MFG notes that purchasers of giclees will receive a "Certificate of Authenticity" bearing "Al Hirschfeld's embossed Seal."

61. However, neither Hirschfeld nor the Foundation has provided an official seal to MFG. Nonetheless, according to MFG, Hirschfeld's "Certificates of Authenticity are recognized around the world."

62. Defendants have been told numerous times over the years that the Foundation does not approve the printing of giclees. However, Defendants have continued undaunted to create these unauthorized reproductions which now flood the market and consequently dilute and significantly impair the value of the Foundation's works and the value of the Foundation's copyrights in the Infringed Works.

63. In conjunction with Defendants' contribution to vast oversupply of the unauthorized giclees, Defendants warn potential customers that the market for Hirschfeld works is teeming with fakes, further reducing the value of the copyrights by driving down customer demand, and therefore perpetuating the very problem they created.

*Termination of the Settlement Agreement*

64. On the same date as this filing, the Foundation will serve Defendants with a notice of termination (the "Termination Notice"), effective as of August __, 2016, pursuant to Paragraph 11 of the Settlement Agreement. Ex. 1 at 25.

65. A true and correct copy of the Termination Notice is attached hereto as Exhibit 2.

## COUNT I – COPYRIGHT INFRINGEMENT
(17 U.S.C. §§ 101 *et seq.*)

66. The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

67. The Infringed Works are copyrightable works of authorship that are duly registered with the U.S. Copyright Office under registration numbers VA 2-005-628 & VA 2-005-630, with effective dates of registration of April 27, 2016.

68. The Foundation is the beneficial owner of the rights in the Infringed Works by virtue of a testamentary transfer from Hirschfeld, creator of the Infringed Works and original owner of copyright rights in and to the Infringed Works.

69. At all times relevant to the Complaint, the Foundation is and has been solely and exclusively authorized to, among other things, reproduce, distribute, and publicly display the Infringed Works.

70. At all times relevant to the Complaint, Defendants were authorized to produce a certain number of limited-edition prints of the Infringed Works each year, but only with the Foundation's prior approval.

71. By their actions alleged above, Defendants have exceeded the scope of their license and have infringed and will continue to infringe the copyrights in the Infringed Works

12

by, *inter alia*, copying, reproducing, publicly displaying and distributing giclee versions of the Infringed Works, in violation of the Foundation's exclusive rights under 17 U.S.C. § 106.

72. Upon information and belief, Defendants' infringement of the Foundation's copyrights in the Infringed Works has been deliberate, willful and in utter disregard of the Foundation's rights.

73. Defendants' acts have caused and will continue to cause irreparable injury to the Foundation. The Foundation has no adequate remedy at law and is thus entitled to an injunction along with damages in an amount to be determined at trial.

74. The Foundation is also entitled to seize and impound all Infringing Works and all articles by means of which such Infringing Works may be reproduced, as well as records documenting the manufacturing, sale, or receipt of things involved in any infringement.

## COUNT II – FALSE DESIGNATION OF ORIGIN & FALSE AFFILIATION
(Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)))

75. The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

76. In connection with their unauthorized creation and sale of giclees of the Infringed Works, Defendants claim that the giclees will be accompanied by a certificate of authenticity stating that the giclees are "created from the best materials in the Al Hirschfeld Archives" and that the giclees "will bear Al Hirschfeld's embossed Seal."

77. These misrepresentations are made in commerce on MFG's website and accompany MFG's listing of the unauthorized giclees for sale.

78. The Foundation does not have an "embossed Seal" and has never authorized Defendants to create such a seal bearing the Hirschfeld name or any other purported indicator of authenticity of the unauthorized giclees (or any other works, for that matter). Moreover, giclees

13

are printed on lower quality paper, and therefore Defendants' statement concerning the quality of the materials the Foundation purportedly endorses is also false.

79. Defendants' deliberate association of the unauthorized giclees with the Foundation, as aforesaid, has caused and is likely to continue to cause confusion, or mistake or to deceive consumers into thinking that Defendants' unauthorized giclees are affiliated, connected or associated with the Foundation and/or that the Foundation sponsors, endorses, licenses or approves Defendants' sale, offer for sale and/or advertisement of the unauthorized giclees.

80. Upon information and belief, the aforesaid acts of Defendants constitute a false designation of origin and false endorsement, in that Defendants have failed to adequately inform consumers at the point of sale that the unauthorized giclees are not in fact approved by and do not originate from the Foundation, and are presenting the unauthorized giclees as if they were genuine and authorized works originating with or endorsed by the Foundation, in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

81. Upon information and belief, by their acts, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

82. Upon information and belief, unless restrained by this Court, Defendants intend to continue their infringing acts, and will continue to willfully infringe upon the goodwill in the Foundation's brand and the Hirschfeld name, including, without limitation, by selling mass-produced unauthorized giclees of the Infringed Works that otherwise would have been considered "limited editions." The flooding of the market with unauthorized prints of lesser quality decreases the value of the Foundation's valuable works as well as its goodwill, brand, and name.

83. Defendants' acts have caused, and will continue to cause, irreparable injury to the Foundation. The Foundation has no adequate remedy at law and is thus entitled to an injunction along with damages in an amount to be determined at trial.

## COUNT III – REPLEVIN
(New York State Common Law)

84. The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

85. Defendants are consignees of the Original Works.

86. Consignment of the Original Works created a bailment relationship between the Foundation and Defendants.

87. Defendants, as bailees, have refused to redeliver certain Original Works to the Foundation, as bailor, despite numerous demands by the Foundation. Specifically, between January and March of 2016, the Foundation demanded return of twenty-eight of the Original Works, setting various deadlines for compliance. Despite the Foundation's repeated and diligent efforts to follow up, Defendants ignored the Foundation's demands and, even after the Foundation's deadlines had passed, continued to refuse to return the twenty-eight Original Works.

88. Any further demand for return of the Original Works, including the aforementioned ten Original Works, by the Foundation would have been futile because of Defendants' consistently obstinate refusals to comply with multiple demands by the Foundation for the return of the Foundation's property.

89. The Foundation has a possessory right to the Original Works which is superior to that of Defendants. Indeed, the Foundation is the owner of the copyrights in and to the Original Works as well as the owner of the physical items consigned to Defendants.

90. Prior to the institution of this action, by virtue of the parties' longstanding relationship, the Prior Lawsuit, the terms of the Settlement Agreement, and the Foundation's prior demands, Defendants had full information relating to their own defect in title to the Original Works as well as the identity of the true owner of the Original Works – the Foundation.

91. The Foundation is entitled to immediate return of all the Original Works including by way of seizure under N.Y. CPLR 7102, particularly given Feiden's propensity to flood the market with lesser-quality giclee prints and then warn customers that the market is teeming with fake Hirschfeld works.

## PRAYER FOR RELIEF

WHEREFORE, the Foundation respectfully demands:

A. That the Court find that Defendants infringed the Foundation's copyrights in the Infringed Works and engaged in false designation of origin and false affiliation relating to the unauthorized giclees;

B. That the Court find that the Foundation has a superior possessory right over the Original Works and that Defendants have refused, upon reasonable demand, to return the Original Works (or that such demand was futile or unnecessary) and that the Foundation is entitled to a return of the Original Works pursuant to the doctrine of replevin;

C. That the Court grant a temporary restraining order, and preliminary and permanent injunction providing that, pursuant to 17 U.S.C. § 502 and 15 U.S.C. § 1116(a), Defendants, their owners, partners, officers, directors, agents, servants, employees, representatives, licensees, subsidiaries, manufacturers and distributors, jointly and severally, be enjoined throughout the world during the pendency of this action and permanently thereafter from:

    i. manufacturing, reproducing, selling, offering for sale, licensing, offering for license, promoting, advertising, distributing, donating, consigning, lending, and/or commercially exploiting in any manner, either directly or indirectly, the giclee or other photostatic reproductions of the Infringed Works, or any other works which Defendants are not entitled to reproduce other than in limited editions;

    ii. using any false description, representation, or designation, or otherwise engaging in conduct that is likely to create an erroneous impression that Defendants' giclee or other photostatic reproductions of the Infringed Works, or any other Hirschfeld works, are endorsed by the Foundation, originate from the Foundation, or are connected in any way with the Foundation, including without limitation by referencing any seal (official or otherwise) of the Foundation or of Hirschfeld or by using the Hirschfeld name in connection with such unlawful statements;

    iii. holding themselves out as authorized distributors of giclees or other photostatic reproductions of any of Hirschfeld's works, including without limitation the Infringed Works; and

    iv. secreting, hiding, destroying, mutilating, selling, donating, licensing, consigning, or otherwise disposing of or impairing the value of any of Hirschfeld's works in Defendants' possession, custody, or control, including without limitation, the Infringed Works and all the Original Works, or attempting to do or causing any third party to do any of the foregoing.

D. For an order requiring an accounting, and that all gains, profits and advantages derived by Defendants by their acts of infringement be deemed held in constructive trust for the benefit of the Foundation.

E. That, pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118, any and all giclee or photostatic reproductions of any Hirschfeld works, including without limitation the Infringed Works, and any originals or prints of the Infringed Works, in Defendants' possession, custody, or control which might, if sold, distributed for sale, or otherwise disposed of, violate the injunction granted herein, be immediately seized and impounded, and delivered to the Court, or to some other person that the Court may designate;

F. For Defendants' acts of copyright infringement, that the Foundation be entitled to recover all damages suffered as a result of Defendants' infringing acts and all profits derived from Defendants' wrongful acts in an amount to be determined at the trial of this action, as provided by 17 U.S.C. § 504(b);

G. That, pursuant to 15 U.S.C. § 1117, Defendants be awarded such damages available under the Lanham Act, including but not limited to, actual damages, Defendants' profits, treble damages, costs of suit and attorneys' fees;

H. That the Court order

  i. that all the Original Works in Defendants' possession, custody, or control which might, if sold, distributed for sale, or otherwise disposed of, violate the injunction granted herein, be immediately seized and impounded, and delivered to the Court, or to some other person that the Court may designate, pursuant to N.Y. CPLR 7102;

  ii. that Defendants, their owners, partners, officers, directors, agents, servants, employees, representatives, licensees, subsidiaries, manufacturers and distributors, jointly and severally, be enjoined throughout the world during the pendency of this action and permanently thereafter from manufacturing, reproducing, selling, offering for sale, licensing, offering for license, promoting, advertising, distributing, donating, consigning, lending, and/or commercially exploiting in any manner, either directly or indirectly, the Original Works, pursuant to N.Y. CPLR 6301 & 7109; and

I.  That the Court grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Foundation demands a trial by jury on all issues so triable in this action.

Dated: New York, New York
   June 2, 2016

        COWAN, DeBAETS, ABRAHAMS
        & SHEPPARD LLP

        By: _[signature]_
        Eleanor M. Lackman
        Scott J. Sholder
        Brittany L. Kaplan
        41 Madison Avenue, 34th Floor
        New York, New York 10010
        Telephone: (212) 974-7474
        Facsimile: (212) 974-8474
        ELackman@cdas.com
        SSholder@cdas.com
        BKaplan@cdas.com

        *Attorneys for Plaintiff Al Hirschfeld Foundation*