UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AL HIRSCHFELD FOUNDATION,<br><br>            Plaintiff,<br><br>   -against-<br><br>THE MARGO FEIDEN GALLERIES LTD.<br>and MARGO FEIDEN,<br><br>            Defendants. | No. 16-cv-04135-PAE |

## AMENDED COMPLAINT

Plaintiff Al Hirschfeld Foundation (the "Foundation"), by its attorneys Cowan, DeBaets,

Abrahams & Sheppard LLP, complains and alleges against defendants The Margo Feiden

Galleries Ltd. ("MFG") and Margo Feiden ("Feiden") (MFG and Feiden, collectively, the

"Defendants") as follows:

## NATURE OF THE CLAIMS

1.     This action arises out of Defendants' willful copyright infringement, false

affiliation and false designation of origin, unlawful continued possession of the Foundation's

property, breach of Defendants' contractual and fiduciary obligations, and Defendants'

negligence and conversion with respect to the Foundation's property.

2.     Such conduct has caused – and continues to cause – damage to the Foundation's

property interests, as well as its ability to promote the legacy of legendary artist Al Hirschfeld

and to fulfill its mission to promote interest in the theater and dramatic arts.

3.     Despite the Foundation's best efforts to put a stop to Defendants' infringements of

the Foundation's intellectual property and to regain possession of valuable, unique, and

irreplaceable works of art wrongfully being withheld by Defendants, Defendants have refused to cease their unlawful activities and voluntarily return the property that rightfully belongs to the Foundation.

4.      The Foundation has terminated its contractual relationship with Defendants, identifying Defendants' multiple, material breaches that remain uncured, despite the passage of at least thirty days since notice was provided, or are otherwise incurable.

5.      Defendants continue, unabated, to cause harm to the Foundation's reputation and goodwill and impair the value of the Foundation's economically and historically valuable works.

## JURISDICTION AND VENUE

6.      This action asserts claims arising under the Copyright Act, 17 U.S.C. §§ 101 *et seq.*, the Lanham Act, 15 U.S.C. §§ 1051 *et seq.,* and New York state law.  This Court has jurisdiction over the Foundation's claims pursuant to 28 U.S.C. §§ 1331, 1338, and 1367(a). Based on the foregoing bases for jurisdiction, the Court also has jurisdiction over the Foundation's declaratory judgment action under 28 U.S.C. § 2201.

7.      This Court has personal jurisdiction over Defendants because they reside in this District, have committed tortious acts within this District and are causing injury within this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1) & (2) and 1400(a).

## THE PARTIES

9.      The Foundation is a Delaware not-for-profit corporation that is authorized to do business in New York, and is based in New York.

10.    MFG is a New York corporation with its principal place of business at 15 East 9th Street, New York, New York 10003.

11.    Feiden is an individual residing at 15 East 9th Street, New York, New York 10003.

## FACTUAL BACKGROUND

### Al Hirschfeld and Establishment of the Foundation

12.    Al Hirschfeld ("Hirschfeld") is one of the most important and celebrated figures in contemporary drawing and caricature.  His unique style of drawing – almost exclusively using pure line in black ink – is widely recognized and has greatly influenced countless artists, illustrators, cartoonists, and animators.

13.    Over the course of Hirschfeld's nine-decade career, he both chronicled and defined much of popular culture, particularly through his drawings of Broadway productions, Hollywood celebrities, and numerous figures from the world of music. His drawings were published in virtually every major publication of the Twentieth Century; indeed, his relationship with *The New York Times* spanned 75 years.

14.    Alive during the birth of television, Hirschfeld captured television's first half-century, creating more covers for *TV Guide* than any other artist.

15.    When the U.S. Postal Service released a series of postage stamps depicting Hirschfeld's renditions of famous American comedians in 1991, the Postal Service included Hirschfeld's name on the stamp booklet, an honor that had not been previously accorded to any artist.

16.    Hirschfeld's drawings are included in numerous public collections, including the Metropolitan Museum of Art, the Whitney Museum of American Art, the Harvard Theatre Collection, the Library of Congress, and the National Portrait Gallery.

17.    At age 92, Hirschfeld was declared a Living Landmark by the New York City Landmarks Commission in 1996 and at age 96, a Living Legend by the Library of Congress in 2000.

18.    His work for the theater was recognized by two lifetime achievement Tony Awards and, in 2003, a Broadway theater was renamed in his honor. His work continues to be valued and valuable, with pieces selling for amounts in the tens of thousands of dollars.

19.    Pursuant to the terms of his Last Will and Testament, Hirschfeld left all of his drawings and works of art that were owned by him at the time of his death, to the extent not bequeathed to certain individuals, to the Foundation.

20.    Hirschfeld also transferred to the Foundation all right, title, and interest in and to any and all copyrights in such works.

21.    As set out on its website, the Foundation's mission is to promote interest in the theater and dramatic arts by supporting not-for-profit museums, libraries, theaters, and similar cultural institutions.

22.    The Foundation fulfills its mission, in part, by presenting exhibitions of Hirschfeld's art works at museums and other venues, and by donating or lending Hirschfeld's artworks to such organizations.

23.    Since Hirschfeld's death in January of 2003, the Foundation has curated exhibitions and installations of Hirschfeld's work, exploring a variety of themes, at venues

around the world; created a curriculum with the New York City Board of Education for students K-12, and established an online catalogue of all of Hirschfeld's art.

**The Prior Litigation and Settlement Agreement with Defendants**

24.     In the early 1970s, Feiden and MFG began representing Hirschfeld as Hirschfeld's agent for the sale and licensing of his artworks. Feiden and Hirschfeld confirmed this representation in a February 14, 1974 consignment agreement, and the relationship continued for more than 25 years.

25.     In May of 2000, however, Hirschfeld brought a lawsuit against both Feiden and MFG, alleging that Defendants had refused to return drawings, records, and documentation that belonged to Hirschfeld, and that Defendants had breached the parties' consignment agreement and had breached their fiduciary duty to Hirschfeld (the "Prior Lawsuit").

26.     According to the complaint filed by Hirschfeld in connection with the Prior Lawsuit, the dispute found its origins in the late 1990's. The Academy of Motion Picture Arts and Sciences had engaged archivist David Leopold, who worked with Hirschfeld, as curator in connection with a Hollywood-based exhibition titled "Hirschfeld's Hollywood." Publication of an exhibition catalogue and book were planned to accompany the exhibition.

27.     Leopold and Hirschfeld enjoyed a close working relationship, with Leopold visiting Hirschfeld's studio on a weekly basis as his archivist. Leopold also curated numerous exhibitions of Hirschfeld's work at venues such as the Library of Congress and the Victoria and Albert Museum in London.

28.     Feiden contacted the Academy directly, making numerous accusatory, threatening, and untrue statements.

29.     The Academy subsequently postponed the exhibition.

30.     Hirschfeld's Prior Lawsuit also claimed that Defendants had engaged in "an intentional, reckless and malicious campaign of harassment and intimidation, transcending all bounds of decency" evidenced in part by Feiden's statement to Hirschfeld that "he would spend the rest of his life in court if he tried to recover his artwork."

31.     Given Hirschfeld's age and the stress of litigation, Hirschfeld elected to settle the dispute.

32.     Accordingly, in September of 2000, the parties executed a settlement agreement to resolve the Prior Lawsuit and govern the parties' relationship going forward (the "Settlement Agreement"). A true and correct copy of the Settlement Agreement is attached hereto as Exhibit 1.

33.     As Hirschfeld's successor-in-interest, the Foundation is bound by the terms of the Settlement Agreement.

**Defendants' Disregard of the Settlement Agreement and the Foundation's Termination Thereof**

34.     The Foundation and Defendants have continued to work together since the execution of the Settlement Agreement.  However, in recent months the relationship has become untenable as a result of Defendants' troubling and unlawful conduct, exacerbated by Feiden's erratic and unpredictable behavior that is far out of step with the Settlement Agreement and the obligations of parties in a trusted position such as Defendants'.

35.     Defendants are in breach of multiple provisions of the Settlement Agreement, and, as the Foundation has recently learned, are actively infringing the Foundation's registered and unregistered copyright rights in several significant Hirschfeld works.

36.     Moreover, the Foundation has also recently learned that Defendants have lost more than 20 of Hirschfeld's works, and have failed to maintain the Hirschfeld works in their

possession with proper care and attention to their preservation, including by storing delicate original works in insecure containers, allowing customers to touch original works, and allowing staff to roughly handle fragile drawings.

37.     Defendants engage in this behavior in a residential townhouse that Feiden holds out as a gallery.

38.     These recent events have made the Foundation painfully aware that Defendants continue to be a hindrance, rather than supporting partner, in preserving and developing Hirschfeld's artistic legacy and promoting the goals of the Foundation.

39.     As a result, the Foundation served a notice of termination on Defendants dated June 6, 2016 (the "Termination Notice").  A true and correct copy of the Termination Notice is attached hereto as Exhibit 2.

40.     The Foundation served the Termination Notice, effective as of September 6, 2016, pursuant to Paragraph 11 of the Settlement Agreement. Ex. 1 at 25.

41.     Feiden received a copy by hand delivery to the Gallery on June 7, 2016, and MFG's counsel received a copy, at the latest, on June 10, 2016.

42.     The Termination Notice enumerated six independent breaches providing grounds for termination of the Settlement Agreement, none of which has been cured within the 30-day window provided by paragraph 11(a) of the Settlement Agreement.

43.     The following uncured or incurable breaches provide the basis for the Foundation's termination of the Settlement Agreement.

*Operation of a Gallery*

44.     Paragraph 5(b) of the Settlement Agreement requires Feiden to maintain a gallery "substantially similar in quality to the gallery that Feiden currently maintains at 699 Madison Ave, devoted primarily to the Retail Sales of the Works" (the "Gallery").  Ex. 1 at 12.

45.     The Gallery was a commercial space in a commercially zoned district.

46.     The Gallery was located in a highly trafficked area of shops and galleries in Manhattan.

47.     Other businesses were also located in the building where the Gallery was located.

48.     The Gallery was primarily dedicated to the sale of Hirschfeld works.

49.     The Gallery was not a private residence.

50.     Feiden did not live at the Gallery or otherwise at 699 Madison Avenue.

51.     Feiden did not keep the majority or all of her personal effects at the Gallery or otherwise at 699 Madison Avenue.

52.     Defendants' current claimed gallery is in a residential townhouse located at 15 E. 9th Street in the East Village.

53.     The current claimed gallery at 15 E. 9th Street is not located in an area zoned for commercial use.

54.     The current claimed gallery at 15 E. 9th Street is not located in a highly trafficked area of Manhattan.

55.     Feiden currently lives in the townhouse located at 15 E. 9th Street.

56.     The current claimed gallery at 15 E. 9th Street is located on a residential block in the East Village.

57.     The current claimed gallery at 15 E. 9th Street contains Feiden's personal effects including in areas where Hirschfeld works are displayed.

58.     There are no other businesses in the gallery's current building at 15 E. 9th Street.

59.     The townhouse located at 15 E. 9th Street is not primarily devoted to retail sales of Hirschfeld works.

60.     For example, when asked for prices on two works ("The Girl From Wyoming" and "Our Town") by a visitor to the gallery, MFG staff could not provide prices for either work.

61.     During that same visit, MFG staff did not provide any information concerning the pricing of prints or drawings.

62.     Some areas of the townhouse located at 15 E. 9th Street are inaccessible to patrons.

63.     On her website and elsewhere, Feiden holds her home out as a professional gallery space where interested patrons can view and purchase Hirschfeld works.

64.     Upon arriving at the townhouse, however, visitors are presented with cast-aside items that have been discarded at the townhouse's front entrance.

65.     In order to reach Defendants' claimed gallery, visitors must be led up a flight of stairs, through a door, and down a hallway before arriving at a room where a purported gallery employee may be found.

66.     The current claimed gallery space is full of trinkets and other items.

67.     The rooms in the current claimed gallery contain objects unrelated to Hirschfeld.

68.     Moreover, Hirschfeld's works are not handled with proper care.

69.     For instance, it was readily apparent during a visit to the gallery on May 10, 2016 that a Martha Graham print on display was slipping out of its mat and required immediate attention.

70.     The Martha Graham print has been slipping out of its mat for at least one year.

71.     While several original drawings stored in the hallway racks are wrapped in Mylar, others are improperly kept in unfastened art bags – clear plastic envelopes that usually have a self-sealing strip and which do not guard against condensation or dirt.

72.     Additionally, visitors are permitted to handle original, and irreplaceable, drawings, despite the works' fragility.

73.     For instance, on one occasion, a visitor was permitted to retrieve the works titled "The Girl From Wyoming" and "Our Town," dated 1938 and 1939, respectively, from the racks in which the works are stored.

74.     When given to Daria Enrick, Feiden's former manicurist who Defendants now identify as MFG's "Curator," Ms. Enrick flipped the drawings over repeatedly, in part to locate the works' respective inventory numbers.

75.     Ms. Enrick also placed at least one of the works on a large binder, such that the drawing bowed in the middle over the binder rings.

76.     At least some, if not all, of the above conditions in the current gallery remain uncured. For instance, the current claimed gallery at 15 E. 9th Street is located on a residential block in the East Village, in an area that is not zoned for commercial use; the current claimed gallery contains Feiden's personal effects, including in areas where Hirschfeld works are displayed; and the townhouse located at 15 East 9th Street is not primarily devoted to retail sales of Hirschfeld works.

*Defendant's Failure to Maintain and Provide Proper Insurance*

77.    Under ¶ 5(f) of the Settlement Agreement, Defendants must "maintain a comprehensive fire and theft insurance policy for the Media Commissioned Works, Private Commissioned Portraits and Consigned Works in Feiden's possession in a face amount of two million dollars ($2,000,000.00) pending determination of an approved price list, and thereafter in an amount not less than the amount of Hirschfeld's consigned interest therein as provided in this Settlement Agreement and so identified in the policy, determined by reference to the approved price list . . . ." Ex. 1 at 13.

78.    Paragraph 5(f) also requires that Hirschfeld, and after his death, his estate and the Foundation "are named as individual insureds" under the policy. *Id.*

79.    Paragraph 5(f) also requires that "Feiden shall furnish Hirschfeld with a copy of said policy and each subsequently issued policy." *Id.*

80.    Defendants have failed to maintain a comprehensive fire and theft insurance policy for the works identified in paragraph 5(f) in the Settlement Agreement in a face amount of $2,000,000.

81.    Defendants did not provide a price list for approval as set forth in ¶ 5(f) of the Settlement Agreement.

82.    Defendants have not maintained an insurance policy that identifies the amount of Hirschfeld's "consigned interest."

83.    Defendants have not named the Foundation as an additional insured.

84.    Defendants have not furnished Hirschfeld or the Foundation with a copy of the original policy.

85. Defendants have not furnished Hirschfeld or the Foundation with a copy of any subsequent policies or certificate of insurance.

*Defendants' Failure to Comply with Reasonable Requests by the Foundation*

86. Paragraph 5(i) of the Settlement Agreement requires Feiden to "take such reasonable directions consistent with this Settlement Agreement from, and cooperate with, the reasonable requests of Hirschfeld, it being understood that Hirschfeld shall have the right to designate other persons to exercise his rights and to communicate his wishes to Feiden under this Settlement Agreement."

87. Paragraph 5(h) of the Settlement Agreement similarly requires Defendants to "cooperate with the reasonable requests" of the Foundation.

88. In 2016 alone Feiden failed to comply with the following requests from the Foundation:

89. On January 13, 2016, the Foundation requested that Defendants make available for pickup ten consigned original works out of the 250 consigned original works owned by the Foundation and provided for in the Settlement Agreement (collectively the "Original Works").

90. The Foundation believed that the ten works were in Defendants' possession.

91. The Foundation requested that the ten Original Works be made available for pickup within ten business days.

92. Under Paragraph 6(h)(vii), the Foundation enjoys "unrestricted access to, and the right to possess," all unsold Original Works in Defendants' possession, provided that the Foundation provides notice to Defendants of no fewer than ten business days and provided that the Foundation bears any reasonable expense associated with the exercise of such right. Ex. 1 at 18.

93.     Defendants did not make any, much less all, of the ten Original Works requested by the Foundation available for pickup within ten business days.

94.     In a January 18, 2016 e-mail, Feiden advised Foundation president Lynn Surry that several of the requested Original Works had already been sold.

95.     Feiden's January 18, 2016 e-mail also requested that the Foundation provide the name of the venue for the Foundation's exhibition of the requested Original Works, the duration of the exhibition, and the themes to be exhibited.

96.     The Settlement Agreement does not obligate the Foundation to identify where Hirschfeld works will be displayed. Ex. 1 at 18 (¶ 6(h)(vii)).

97.     On January 25, 2016, the Foundation again requested that Defendants make available for pick up three Original Works that the Foundation believed were in Defendants' possession.

98.     Defendants did not make the Original Works available for pick up within ten business days.

99.     On January 25, 2016, the Foundation requested that Defendants provide information on a pending sale of the work titled "Dr. Who" (inventory number 2594).

100.    The work titled "Dr. Who" had been on Defendants' list of pending sales since May 31, 2011.

101.    Defendants did not comply with this request.

102.    On January 25, 2016, the Foundation also requested that Defendants provide additional information concerning a proposed collaboration with Time Life Magazine involving a reproduction of the Hirschfeld work titled "Bob Hope."

103.   Defendants did not comply with this request to provide additional information concerning the Time Life Magazine reproduction.

104.   On January 27, 2016, the Foundation again requested information concerning the dates on which certain drawings were sold, and the sale amounts.

105.   Defendants did not provide this information to the Foundation.

106.   On February 11, 2016, the Foundation requested that Defendants make available for pickup 25 Hirschfeld drawings that the Foundation believed were in Defendants' possession, in addition to three of the previously requested ten works.

107.   Defendants did not comply with this request.

108.   On February 11, 2016, the Foundation also requested that Defendants provide an inventory list of Hirschfeld works in Defendants' possession as required by the Settlement Agreement.

109.   Defendants did not provide an inventory list in compliance with this request.

110.   On February 15, 2016, the Foundation again requested that Defendants make available for pickup 28 Hirschfeld drawings that the Foundation believed were in Defendants' possession.

111.   Defendants did not comply with this request.

112.   During a February 16, 2016 phone call between Foundation archives manager Katherine Eastman and Feiden, the Foundation again requested that the drawings be made available for pickup.

113.   Defendants did not comply with this request.

114.   On February 17, 2016, the Foundation again requested that Defendants make available for pickup 28 Hirschfeld drawings that the Foundation believed were in Defendants' possession.

115.   Defendants did not comply with this request.

116.   On February 17, 2016, the Foundation also again requested that Defendants provide an inventory list of Hirschfeld works in Defendants' possession.

117.   Defendants did not comply with this request.

118.   On February 18, 2016, the Foundation again requested that Defendants make available for pickup 28 Hirschfeld drawings that the Foundation believed were in Defendants' possession.

119.   Defendants did not comply with this request.

120.   On February 20, 2016, the Foundation again requested that Defendants make available for pickup 28 Hirschfeld drawings that the Foundation believed were in Defendants' possession.

121.   Defendants did not comply with this request.

122.   On February 22, 2016, the Foundation again requested that Defendants make available for pickup 28 Hirschfeld drawings that the Foundation believed were in Defendants' possession.

123.   Defendants did not comply with this request.

124.   On February 23, 2016, the Foundation again requested that Defendants make available for pickup 28 Hirschfeld drawings that the Foundation believed were in Defendants' possession.

125.    On February 24, 2016, Feiden responded that she would be willing to get the drawings for a client, but not for the Foundation without conditions.

126.    None of Feiden's requested conditions are set forth in the Settlement Agreement.

127.    On February 25, 2016, the Foundation again requested that Defendants make available for pickup 28 Hirschfeld drawings that the Foundation believed were in Defendants' possession.

128.    Defendants did not comply with this request.

129.    On February 28, 2016, the Foundation again requested that Defendants make available for pickup 28 Hirschfeld drawings that the Foundation believed were in Defendants' possession.

130.    Defendants did not comply with this request.

131.    On February 28, 2016, the Foundation again requested additional information from Defendants concerning the planned Time Life Magazine collaboration involving reproductions of the work titled "Bob Hope."

132.    Defendants did not comply with this request.

133.    On May 3, 2016, the Foundation requested that Defendants identify the purchaser and purchase price of the work titled "Max von Sydow as Strindberg."

134.    Defendants did not comply with this request.

135.    Following this Court's June 7, 2016 order requiring them to do so, Defendants returned to the Foundation on June 10, 2016 and June 15, 2016 the following Original Works, which the Foundation had previously requested more than ten days earlier:

136.    Archive No. 1940: Top Banana with Phil Silvers, Ted Sport Morgan, The Singing Canine & Other Comics and Ensemble, February 24, 1952

137.   Archive No. 2148: Camera on Tripod, 1962

138.   Archive No. 1317: Christopher Hewett in Peter Pan, December 21, 1979

139.   Archive No. 2594: Seven Actors Who Have Played Dr. Who

140.   Archive No. 3446: Dick Cavett, August 31, 1997

141.   Archive No. 2517: Debbie Reynolds and Eddie Fisher, December 10, 1954

142.   Archive No. 2837: Most Happy Fellas, July 6, 1956

143.   Archive No. 1640: Subways Are For Sleeping, December 24, 1961

144.   Archive No. 953: Kirk Douglas in Lonely are the Brave, 1979

145.   Archive No. 1026: Kenny Rogers

146.   Archive No. 1759: Kathy Bates in Curse of the Starving Class, August 18, 1985

147.   Archive No. 1806: Elizabeth McGovern in A Map of the World, October 25, 1985

148.   Archive No. 1807: Aunt Dan and Lemon, October 17, 1985

149.   Archive No. 1811: Oliver, Oliver, November 10, 1985

150.   Archive No. 1858: Hamlet, March 2, 1986

151.   Archive No. 2032: Courtney Vance in Fences, May 15, 1987

152.   Archive No. 2197: Burn this, Joan Allen, April 8, 1988

153.   Archive No. 2251: Sandra Bernhard, Without You I'm Nothing, August 19, 1988

154.   Archive No. 2343: Boyd Gaines in the Heidi Chronicle, January 6, 1989

155.   Archive No. 2581: Eric Bogosian in Sex, Drugs Rock and Roll, February 4, 1990

156.   Archive No. 2920: Lauren Hutton, January 1993

157.   Archive No. 2945: The Who's Tommy, 1993

158.   Archive No. 3043: My Fair Lady, December 15, 1993

159.   Archive No. 3511: Macbeth, March 1, 1998

160. Archive No. 3703: Bill Gates, 1999

161. Archive No. 3707: George Stephanopoulos, 1999

162. Archive No. 3751: Cast of Ally McBeal

163. Archive No. 3987: John Leguizamo, May 19, 2002

164. These 28 works are the property of the Foundation.

*Defendants' Refusal to Return Consigned Works*

165. Paragraph 6(a) of the Settlement Agreement provides that the relationship between the Foundation and MFG shall be construed in accordance with the New York Arts and Cultural Affairs Law (the "Arts Law"). Ex. 1 at 14.

166. Paragraph 6(e) of the Settlement Agreement says that all Foundation works in Defendants' possession, custody, or control are on "consignment" within the meaning of the Arts Law. *Id.* at 15.

167. Pursuant to ¶ 2(a) of the Settlement Agreement, Defendants are permitted to possess a limited number of original Hirschfeld works, to be held on consignment. *Id.* at 3.

168. Defendants were permitted to retain a maximum of 250 consigned Original Works. Ex. 1 at 3.

169. As discussed above, the Foundation made requests for the return of various Original Works on January 13, 2016; January 25, 2016; February 11, 2016; February 15, 2016; February 16, 2016; February 17, 2016; February 18, 2016; February 20, 2016; February 22, 2016; February 23, 2016; February 25, 2016; and February 28, 2016. (*See supra* ¶¶ 89-135.)

170. The requested Original Works included the following:

171. Archive No. 2890: The Show Is On with Mitzi Mayfair, July 4, 1937

18

172.    Archive No. 1940: Top Banana with Phil Silvers, Ted Sport Morgan, The Singing Canine & Other Comics and Ensemble, February 24, 1952

173.    Archive No. 2148: Camera on Tripod, 1962

174.    Archive No. 1317: Christopher Hewett in Peter Pan, December 21, 1979

175.    Archive No. 2194: Joe Turner's Come and Gone with Ed Hall, Delroy Lindo, Mel Winkler, Scott Caldwell, Angela Bassett and Bo Bucker, March 27, 1988

176.    Archive No. 2594: Seven Actors Who Have Played Dr. Who

177.    Archive No. 3446: Dick Cavett, August 31, 1997

178.    Archive No. 2517: Debbie Reynolds and Eddie Fisher, December 10, 1954

179.    Archive No. 2837: Most Happy Fellas, July 6, 1956

180.    Archive No. 1640: Subways Are For Sleeping, December 24, 1961

181.    Archive No. 953: Kirk Douglas in Lonely are the Brave, 1979

182.    Archive No. 1026: Kenny Rogers

183.    Archive No. 1759: Kathy Bates in Curse of the Starving Class, August 18, 1985

184.    Archive No. 1806: Elizabeth McGovern in A Map of the World, October 25, 1985

185.    Archive No. 2159: Elizabeth McGovern in A Midsummer Night's Dream, January 29, 1988

186.    Archive No. 1807: Aunt Dan and Lemon, October 17, 1985

187.    Archive No. 1811: Oliver, Oliver, November 10, 1985

188.    Archive No. 1858: Hamlet, March 2, 1986

189.    Archive No. 2032: Courtney Vance in Fences, May 15, 1987

190.    Archive No. 2197: Burn this, Joan Allen, April 8, 1988

191.    Archive No. 2251: Sandra Bernhard, Without You I'm Nothing, August 19, 1988

192.   Archive No. 2343: Boyd Gaines in the Heidi Chronicle, January 6, 1989

193.   Archive No. 2581: Eric Bogosian in Sex, Drugs Rock and Roll, February 4, 1990

194.   Archive No. 2920: Lauren Hutton, January 1993

195.   Archive No. 2945: The Who's Tommy, 1993

196.   Archive No. 3043: My Fair Lady, December 15, 1993

197.   Archive No. 3511: Macbeth, March 1, 1998

198.   Archive No. 3703: Bill Gates, 1999

199.   Archive No. 3707: George Stephanopoulos, 1999

200.   Archive No. 3751: Cast of Ally McBeal

201.   Archive No. 3987: John Leguizamo, May 19, 2002

202.   Subsequent to its initial request in January of 2016, the Foundation notified Defendants that Archive No. 2890: The Show Is On with Mitzi Mayfair, July 4, 1937, was in fact already in the Foundation's possession.

203.   Defendants did not return any of the works in its possession until, at the earliest, June 10, 2016.

204.   Twenty-eight works were returned to the Foundation on June 10, 2016 and June 15, 2016 pursuant to the Court's order.

205.   These aforementioned works (¶¶ 136-163) were not voluntarily returned pursuant to the Foundation's previous requests.

206.   The works were not returned within ten business days of the Foundation's multiple requests pursuant to the Settlement Agreement.

207.   Defendants have not returned Archive No. 2159: Elizabeth McGovern in A Midsummer Night's Dream, January 29, 1988. Defendants maintain that the work is not in their possession, but rather, is in the possession of Louise Hirschfeld.

208.   The Foundation has confirmed with Louise Hirschfeld that the work is not in her possession.

*Defendants' Copyright Infringements*

209.   Pursuant to Paragraph 6(h)(i) of the Settlement Agreement, the Foundation retains "sole proprietorship" of copyright rights in all of Hirschfeld's works.  Ex. 1 at 16.

210.   While ¶ 3(c) the Settlement Agreement authorizes Feiden to produce a certain number of limited-edition prints of Hirschfeld's works each year, the prints must be approved by the Foundation in writing. *Id.* at 8.

211.   The Settlement Agreement imposes no time limit within which the Foundation must respond to Defendants' requests to produce limited-edition prints.

212.   In December of 2015, Feiden requested the Foundation's authorization to reproduce a Hirschfeld work titled "Bob Hope" as a new print edition in connection with a proposed distribution agreement with Time Life.

213.   On February 2, 2016, following inquiry by the Foundation, the Foundation denied this request.

214.   Also in December of 2015, Feiden requested the Foundation's authorization to reproduce another Hirschfeld work titled "Carol Burnett," as a new print edition in connection with a proposed distribution agreement with Time Life.

215.   On February 2, 2016, the Foundation denied this request. *See id.*

216.   On February 28, 2016, the Foundation again denied Feiden's requests and expressed its concern that the subjects of the proposed print editions, particularly "Bob Hope," were very similar to existing limited edition prints. *See* Ex. 3.

217.   On March 14, 2016, Feiden informed the Foundation that, "By the time of your email, February 2, the Time Life deal had been completed."

218.   Indeed, by that point, "Bob Hope" was available for purchase from Time Life's website as part of a purportedly "exclusive" Time Life edition. *See* Ex. 4.

219.   The "Bob Hope" print is identical to an existing limited edition print published in 1988; while the former currently retails for over $6,500, the latter was priced at $199.99.

220.   The Foundation never provided written authorization to Defendants to reproduce "Bob Hope."

221.   The Foundation never provided written authorization to Defendants to reproduce "Carol Burnett."

222.   Defendants have also offered for sale reproductions of other Hirschfeld works.

223.   Specifically, Defendants have offered for sale reproductions of the work titled "Annie Hall" (together with "Bob Hope," the "Infringed Works").

224.   The Foundation did not provide written authorization to Defendants to reproduce the work titled "Annie Hall."

225.   "Annie Hall" has been offered for sale on MFG's website.

226.   MFG characterized the work titled "Annie Hall" as a "giclee."

227.   Giclees are print-on-demand, digital reproductions of works printed on inkjet printers.

228.   Giclees are typically printed on lesser-quality paper than the Original Works or limited-edition lithograph prints.

229.   Giclees do not possess the collecting value of prints made during Hirschfeld's lifetime.

230.   Giclees generally lack the stature of traditional limited edition lithographs or etchings.

231.   However, Defendants continue to create these unauthorized reproductions which now flood the market and consequently dilute and significantly impair the value of the Foundation's works and the value of the Foundation's copyrights in the Infringed Works.

232.   MFG's website also has warned potential customers that the market for Hirschfeld works is teeming with fakes. *See* Ex. 5.

233.   MFG's statement further reduces the value of the Foundation's copyrights by driving down customer demand.

## Additional Breaches of the Settlement Agreement and Other Violations of the Law
### *Further Violations of Unregistered Copyrights*

234.   Defendants have violated the Foundation's retention of copyright rights under ¶ 6(h)(i) of the Settlement Agreement in other ways as well.

235.   As noted above, Defendants authorized Time Life to reproduce the work titled "Carol Burnett," as a new print edition.

236.   Defendants did so without the Foundation's permission.

237.   Defendants have also created unauthorized "posthumous editions" of certain Hirschfeld works, including "Jackie Gleason and Art Carney in '*The Golf Ball*,'" "Washington Square," "West Side Story," "Artist and His Muse," "Laurel & Hardy 'Long & Wide,'" and

"Zabar's," that, according to MFG, are "Estate Stamped and Embossed with the Seal of The Margo Feiden Galleries Ltd" (collectively, the "Posthumous Editions").

238.   The Posthumous Editions are giclees.

239.   Defendants have not requested permission from the Foundation to create the Posthumous Editions.

240.   Defendants have not reported sales of the Posthumous Editions to the Foundation.

241.   Defendants have not distributed to the Foundation sales proceeds in connection with the Posthumous Editions.

242.   Defendants have continued to create these unauthorized reproductions which now circulate in the market despite the fact that they are not approved by the successor to Al Hirschfeld.

243.   These reproductions consequently dilute and significantly impair the value of the Foundation's works and the value of the Foundation's copyrights.

244.   Defendants also offer for sale a "Hirschfeld Spectacular" "poster" giclee featuring images of over thirty Hirschfeld drawings (the "Poster Giclee").

245.   Each Poster Giclee is accompanied by a purported "Certificate of Authenticity."

246.   The Poster Giclee is sold on Feiden's website.

247.   Defendants also sell the Poster Giclee on eBay.

248.   Defendants' listing on eBay states that each Poster Giclee is hand-signed by Hirschfeld.

249.   But the Posters were created in connection with an event that took place over a decade after Hirschfeld's death.

250.   Defendants did not seek authorization from the Foundation prior to creating the Poster Giclee.

251.   Defendants have retained all profits earned in connection with the sale of the Poster Giclee.

252.   Defendants contribute to an oversupply of unauthorized giclees, including the Poster Giclee, and Posthumous Editions, further reducing the value of the copyrights by driving down customer demand.

253.   MFG's website features other instances of unauthorized reproductions, including certain Hirschfeld works available for download at no cost as virtual "wallpaper" (the "Wallpaper Images").

254.   Further, Defendants have licensed for reproduction numerous Hirschfeld works in a manner inconsistent with their fiduciary obligations to properly charge and ensure that copyright lines ae provided.

255.   Defendants have, for instance, licensed approximately one dozen separate drawings for reproduction in connection with a midtown Manhattan condominium building's brochure.

256.   Several drawings also appear on a wraparound banner advertisement covering the base of the building.

257.   In exchange for such extensive and continued exploitation of Hirschfeld's artwork, Defendants' charged the building's owner only $2,400 in licensing fees.

258.   The fee charged should have been at least $25,000.

259.   The Foundation has not been compensated for these licenses.

260.   The artwork used on the building and in the building's brochure also did not include a copyright notice under ¶ 8(a) of the Settlement Agreement.

261.   Defendants have entered into at least six additional licensing agreements for which the Foundation has not been compensated.

262.   For instance, Defendants licensed a drawing of John Lithgow in "Bedroom Farce" for Lithgow's memoir, first published in 2012.

263.   The Foundation received no compensation in connection with this licensing arrangement.

264.   Defendants licensed a drawing of Noel Coward for the book titled "The Treasures of Noel Coward," first published in 2012.

265.   The Foundation received no compensation in connection with this licensing arrangement.

266.   Moreover, the Coward drawing lacked the copyright notice required by ¶ 8(a) of the Settlement Agreement.

267.   The above copyright-related breaches of Paragraph 6 of the Settlement Agreement are incurable.

*Failure to Provide Price Lists*

268.   Paragraph 5(d)(i) of the Settlement Agreement states that "prior to January 31 of each year commencing in 2001, Feiden shall submit to Hirschfeld for approval a price list for Consigned Works included in the Consignment Number . . . ." Ex. 1 at 12.

269.   Defendants have not provided a 2016 price list to the Foundation.

270.   Defendants have also failed to provide price lists in previous years, including in the previous six years.

271.   Defendants' failure to provide price lists makes it impossible for the Foundation to confirm that Hirschfeld's artwork is being sold in amounts "consistent with past practice" as required by the Settlement Agreement. *Id.*

*Failure to Report Sales*

272.   Paragraph 7(d) of the Settlement Agreement states that "[w]ithin thirty (30) days after the end of each month during the Term, Feiden shall render to Hirschfeld (i) a statement setting forth the sale and/or licensure of each Work, the list and actual sales price of each, and the identity of the purchaser or licensee; and (ii) full payment of all amounts due Hirschfeld pursuant to this Settlement Agreement." Ex. 1 at 20.

273.   Defendants have not complied with the above paragraph in connection with numerous Hirschfeld works.

274.   For example, the work titled "Follow the Girls" was sold in October 2010 for $5,199.

275.   Feiden asked for this work as part of 500 Hirschfeld works she requested in 2000.

276.   Feiden subsequently asked to keep this work as part of a group of 250 she wanted to retain in 2003.

277.   On MFG's June 22, 2016 inventory list, MFG claims "Follow the Girls" was sold.

278.   The sale of "Follow the Girls" was not reported to the Foundation.

279.   Defendants never paid the Foundation a portion of the sale price for "Follow the Girls."

280.   Other Hirschfeld works Defendants report as being sold by Defendants do not appear on Defendants' monthly statements to the Foundation.

281.   These works include "The Many Faces of Bob Hope," "David Dukes in M Butterfly," "Born Yesterday," "Holland Taylor in The Cocktail Hour," and "Cast of Mr. President."

*Defendant's Inadequate Recordkeeping and Reporting*

282.   As consignees and fiduciaries, Defendants are obligated to keep impeccable track of the works consigned to them, but Defendants are unable to keep track of the valuable Hirschfeld works consigned to them.

283.   Defendants maintain, for instance, that the work titled "Elizabeth McGovern in A Midsummer's Night Dream" is not located at MFG.

284.   According to the Foundation's records, the McGovern drawing was released to MFG in July of 2005.

285.   Defendants have reported no subsequent sale or loan of that drawing.

286.   Defendants have also created confusion by representing that certain Hirschfeld works are in their possession when they are not.

287.   For instance, the drawing entitled "Joan Collins in Private Lives" has been in the Foundation's possession since 2003 and is currently on consignment in a gallery in London since 2005. Nonetheless, Defendants still list the work as available for sale through MFG, and at a price lower than the Foundation is charging.

288.   Defendants have also misplaced more than 20 Original Works.

289.   These Original Works in Defendants' care have gone missing.

290.   Feiden admits she does not know where these Original Works are or cannot account for them in sales records.

*Improper Copyright Credit*

291.   Paragraph 8(a) of the Settlement Agreement states that each Hirschfeld work sold by Defendants should bear the copyright notice: "© [year of first publication if reasonably available] Al Hirschfeld."

292.   Defendants have added either Feiden or MFG as copyright owner in the copyright notices in contravention of this paragraph.  (See Ex. 1 at 22.)

*Unfair Competition and Violations of Hirschfeld's Trademark and Publicity Rights*

293.   Until at least July 14, 2016, MFG's website identified MFG as Hirschfeld's "EXCLUSIVE REPRESENTATIVE" and stated that "Al Hirschfeld is represented exclusively by the Margo Feiden Galleries Ltd."

294.   Until at least July 14, 2016, MFG's website also stated that MFG was "the world-wide exclusive representative for Al Hirschfeld Art[.]"

295.   In addition to violating the Lanham Act, this statement also breaches ¶ 2(i) of the Agreement, which states that MFG can exclusively operate a gallery only in New York and New Jersey.

296.   In fact, Defendants were never Hirschfeld's exclusive representative anywhere outside of New York and New Jersey.

297.   Under the Settlement Agreement, the Foundation is permitted to—and does— work with galleries located outside of New York and New Jersey.

298.   On its website, MFG states that Posthumous Editions are "Estate Stamped and Embossed with the Seal of The Margo Feiden Galleries Ltd."

299.   Additionally, MFG notes that purchasers of giclees will receive a "Certificate of Authenticity" bearing "Al Hirschfeld's embossed Seal."

300.   Hirschfeld did not have a seal, nor did he provide such seal to Defendants.

301.   MFG also notes that purchasers of the Poster Giclee will receive a "Certificate of Authenticity."

302.   Defendants' "Certificate of Authenticity" states that MFG is "The Exclusive Representative of Al Hirschfeld's Art since 1969."

303.   According to Defendants, the Poster Giclee "bears the raised seals of the Al Hirschfeld Estate and the Margo Feiden Galleries Ltd."

304.   However, the Foundation has not provided an official seal or stamp to MFG.

305.   The Foundation has not authorized MFG's creation or sale of giclees.

306.   The Foundation has not authorized MFG's creation or sale of the Poster Giclee.

307.   According to MFG, Hirschfeld's "Certificates of Authenticity are recognized around the world."

308.   In addition to violating the Lanham Act, the above actions breach ¶ 6(h)(i) of the Settlement Agreement under which Hirschfeld retained all rights in trademarks and his privacy and publicity rights.

309.   The MFG website also states that MFG is the Hirschfeld archivist and that the website is "Al Hirschfeld's Official Website."

310.   Defendants communicate via email in the name of Al Hirschfeld, not in the name of Margo Feiden or the Margo Feiden Galleries.

311.   The Foundation maintains its own website devoted to the artwork and life of Hirschfeld.

312.   In addition to violating the Lanham Act, this statement also breaches 6(d) of the Agreement, which states that the Foundation has no joint venture or partnership with Feiden or MFG.

## COUNT I – COPYRIGHT INFRINGEMENT
### (17 U.S.C. §§ 101 *et seq.*)

313.   The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

314.   The Infringed Works are copyrightable works of authorship that are duly registered with the U.S. Copyright Office under registration numbers VA 2-005-628 & VA 2-005-630, with effective dates of registration of April 27, 2016.

315.   The Foundation is the beneficial owner of the rights in the Infringed Works by virtue of a testamentary transfer from Hirschfeld, creator of the Infringed Works and original owner of copyright rights in and to the Infringed Works.

316.   At all times relevant to the Complaint, and apart from marketing use by the owner for the sale of the original of the Infringed Works, the Foundation is and has been solely and exclusively authorized to, among other things, reproduce, distribute, and publicly display the Infringed Works.

317.   At all times relevant to the Complaint, Defendants were not authorized to produce any additional limited-edition prints of the Infringed Works.

318.   By their actions alleged above, Defendants have exceeded the scope of their license and have infringed the copyrights in the Infringed Works by, *inter alia*, copying, reproducing, publicly displaying and distributing giclee versions of the Infringed Works, in violation of the Foundation's exclusive rights under 17 U.S.C. § 106.

319.   Upon information and belief, Defendants' infringement of the Foundation's copyrights in the Infringed Works has been deliberate and willful.

320.   Defendants' acts have caused and, unless permanently enjoined, will continue to cause irreparable injury to the Foundation.  The Foundation has no adequate remedy at law and is thus entitled to an injunction along with damages in an amount to be determined at trial.

321.   The Foundation is also entitled to seize and impound all Infringing Works and all articles by means of which such Infringing Works may be reproduced, as well as records documenting the manufacturing, sale, or receipt of things involved in any infringement.

### COUNT II – FALSE DESIGNATION OF ORIGIN & FALSE AFFILIATION
(Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a))

322.   The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.  In connection with their unauthorized creation and sale of giclees of the Infringed Works, Defendants have claimed that the giclees will be accompanied by a certificate of authenticity stating that the giclees are "created from the best materials in the Al Hirschfeld Archives" and that the giclees "will bear Al Hirschfeld's embossed Seal."

323.   Similarly, Defendants claim that purchasers of the Poster Giclee and Posthumous Editions will receive a "Certificate of Authenticity" and that the Posthumous Editions will bear a "seal."

324.   These misrepresentations are made in commerce on MFG's website and accompany MFG's listing of the Poster Giclee and Posthumous Editions, and had accompanied Defendants' unauthorized giclees for sale.

325.   The Foundation has never provided Defendants with an "embossed Seal" and has never authorized Defendants to utilize a seal bearing the Hirschfeld name or any other purported indicator of authenticity of the Poster Giclee, Posthumous Editions, or unauthorized giclees (or any other works, for that matter).

326.   Moreover, giclees are printed on lower quality paper than the Original Works or limited-edition prints, and therefore Defendants' statement concerning the quality of the materials the Foundation purportedly endorses was also false.

327.   Defendants' deliberate association of the Poster Giclee, Posthumous Editions, and giclees with the Foundation, as aforesaid, has caused and is likely to continue to cause confusion, or mistake or to deceive consumers into thinking that Defendants' Poster Giclee, Posthumous Editions, or giclees are affiliated, connected or associated with the Foundation and/or that the Foundation sponsors, endorses, licenses or approves Defendants' sale, offer for sale and/or advertisement of the Poster Giclee or unauthorized giclees.

328.   Upon information and belief, the aforesaid acts of Defendants constitute a false designation of origin and false affiliation, in that Defendants have failed to adequately inform consumers at the point of sale that the Poster Giclee, Posthumous Editions, and giclees are not in fact approved by and do not originate from the Foundation, and are or were presenting the Poster Giclee, Posthumous Editions, and giclees as if they were genuine and authorized works originating with or endorsed by the Foundation, in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

329.   Until at least July 14, 2016, the MFG website stated that Defendants were Hirschfeld's "exclusive" representatives and that such representation extended world-wide.

330.   The MFG website also still states that MFG is the Hirschfeld archivist and that the website is "Al Hirschfeld's Official Website."

331.   Defendants' deliberate actions, as aforesaid, have caused and are likely to continue to cause confusion or mistake or to deceive consumers into thinking Defendants' website is associated with the Foundation and that MFG is affiliated with the Foundation in a

way in which it is not (*i.e.*, as Hirschfeld's world-wide exclusive representative, and as the Foundation's archivist).

332.   Upon information and belief, the aforesaid acts of Defendants constitute a false affiliation, in that Defendants have failed to adequately inform consumers as to the true relationship between Defendants and the Foundation, in violation of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

333.   Upon information and belief, by their acts, Defendants have made and will continue to make substantial profits and gains to which they are not in law or equity entitled.

334.   Upon information and belief, unless restrained by this Court, Defendants intend to continue their infringing acts, and will continue to willfully infringe upon the goodwill in the Foundation's brand and the Hirschfeld name, including, without limitation, by selling the Poster Giclee, Posthumous Editions, and mass-produced giclees of the Infringed Works that otherwise would have been considered "limited editions," and by falsely stating that MFG's website is associated with the Foundation, and that MFG is the Foundation's archivist.

335.   Moreover, the continued flooding of the market with unauthorized prints decreases the value of the Foundation's valuable works as well as its goodwill, brand, and name.

336.   Defendants' acts have caused, and will continue to cause, irreparable injury to the Foundation.  The Foundation has no adequate remedy at law and is thus entitled to an injunction along with damages in an amount to be determined at trial.

## COUNT III – BREACH OF CONTRACT
### (New York Common Law)

337.   The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

338.   The Settlement Agreement is a valid, binding, and enforceable contract.

339.   The Foundation has complied with its obligations thereunder.

340.   Defendants have breached at least the following provisions of the Settlement Agreement:   ¶¶ 2(i), 3(c), 4(a), 5(b), 5(c), 5(d)(i), 5(f), 5(h), 5(i), 6(a), 6(e), 6(h)(i), 6(h)(vii), and 8(a).

341.   Defendants have not cured any of the breaches identified to them.

342.   Defendants' multiple breaches have damaged the Foundation in an amount to be determined at trial.

## COUNT IV – BREACH OF FIDUCIARY DUTY
### (New York Common Law)

343.   The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

344.   Pursuant to the Settlement Agreement and the New York Arts and Cultural Affairs Law, which governs the relationship between the Foundation and Defendants, Defendants are fiduciaries of the Foundation.

345.   By their actions above, including violating the Foundation's intellectual property rights; failing to report sales and retaining profits solely for themselves; offering for sale and selling Hirschfeld works that have consistently been marked by Hirschfeld or the Foundation to be "not for sale;" selling works at flat prices that do not reflect current market value; and generally undermining the artistic legacy they have been entrusted with promoting, Defendants have violated their fiduciary duties to the Foundation.

346.   Defendants' acts have caused, and will continue to cause, irreparable injury to the Foundation.   The Foundation is entitled to an injunctive relief prohibiting Defendants from continuing to act on behalf of the Foundation.

## COUNT V – REPLEVIN

347.   The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

348.   Defendants, under the terms of the Settlement Agreement, were permitted to act as consignees of up to 500 unsold Original Works (and up to 250 after Hirschfeld's death), excepting the "Feiden Old Prints" (as defined in the preamble of the Settlement Agreement).

349.   Consignment of the aforementioned Original Works created a bailment relationship between the Foundation and Defendants.

350.   The Foundation has a possessory right to the aforementioned Original Works which is superior to that of Defendants.   Indeed, the Foundation is the owner of the copyrights in and to the aforementioned Original Works as well as the owner of the physical items consigned to Defendants.

351.   Prior to the institution of this action, by virtue of the parties' longstanding relationship, the Prior Lawsuit, the terms of the Settlement Agreement, and the Foundation's prior demands, Defendants had full information relating to their own defect in title to the Original Works as well as the identity of the true owner of the Original Works – the Foundation.

352.   Defendants had refused to deliver 28 Original Works to the Foundation.

353.   Defendants ultimately delivered 28 Original Works to the Foundation on June 10 and 15, 2016, but only pursuant to this Court's order.

354.   Defendants, as bailees, have refused to deliver one of the Original Works, "Elizabeth McGovern in A Midsummer Night's Dream," to the Foundation, as bailor, despite numerous demands by the Foundation and a court order.

355.   Any further demand for return of the work titled "Elizabeth McGovern in A Midsummer Night's Dream" would be futile because Defendants maintain that the work is not in their possession.

356.   The Foundation is entitled to immediate return of the work titled "Elizabeth McGovern in A Midsummer Night's Dream."

## COUNT VI – CONVERSION
(New York Common Law)

357.   The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

358.   The Foundation is the owner of the consigned Original Works mentioned above.

359.   By virtue of the consignment arrangement, Defendants acknowledge that the Foundation is the owner of all of the aforementioned Original Works that were consigned to the Defendants.

360.   Defendants have not identified the whereabouts of the work titled "S.J. Perelman: Readying Myself for My Debut (inventory number 379)."

361.   Defendants have not identified the whereabouts of the work titled "Boardwalk" (inventory number 1008).

362.   One work, called "Carmen (inventory number 1997)," left Defendants' possession and the Foundation was not paid for it.  The work has since shown up in the marketplace for sale by a third party.

363.   The whereabouts of at least 20 more Original Works are unknown.

364.   The missing Original Works were in Defendants' possession, custody, or control.

365.   Defendants have converted the Foundation's valuable property by either retaining unauthorized possession of the Original Works or secreting or otherwise losing the Original Works entrusted to their care.

366.   Defendants' conduct excludes and prevents the Foundation from using the Original Works to promote the goals of the Foundation and from otherwise benefitting from the artwork whether financially or otherwise.

367.   Defendants' conversion has caused and will continue to cause damage to the Foundation in an amount to be determined at trial.

## COUNT VII – NEGLIGENCE
(New York Common Law)

368.   The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

369.   Defendants owed a duty to the Foundation to treat its valuable and irreplaceable works of art with care, including with respect to storage and handling.

370.   Defendants breached that duty in several ways.

371.   Defendants' employees mishandled delicate original works of art, failing to treat fragile original drawings with any semblance of care.

372.   Defendants and their employees stored valuable works by improper or insecure means, and sometimes did not store them at all.

373.   Defendants permit visitors to handle original, irreplaceable drawings despite those works' fragility.

374.   Defendants also have a duty of care to keep track of the artworks entrusted to them and ensure they were not misplaced or lost.

375.    Defendants breached that duty because the whereabouts of more than 20 Original Works entrusted to Defendants' care are currently unknown.

376.    Feiden admits she does not know where these works are or cannot account for them in sales records.

377.    Defendants' breach of their duty directly and proximately caused damage to the Foundation including as a result of the significant loss of value to mishandled and improperly stored works, and as a result of the total loss of value of the works that Defendants lost.

378.    The Foundation has been damaged in an amount to be determined at trial.

## COUNT VIII – DECLARATORY JUDGMENT
### (28 U.S.C. § 2201)

379.    The Foundation incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth in this paragraph.

380.    Based on certain statements Defendants have made in this litigation and a "response" to the termination letter, an actual and justiciable controversy exists between the parties as to whether the Settlement Agreement has been terminated.

381.    The Foundation effectively terminated the Settlement Agreement with Defendants because it provided 30 days' written notice that the contractual relationship was ending, and Defendants did not cure all of the breaches identified in the Foundation's Termination Letter within 30 days pursuant to ¶ 11(a) of the Settlement Agreement.

382.    The Foundation has no adequate remedy at law.

383.    The Foundation is entitled to a declaratory judgment, pursuant to 28 U.S.C. §§ 2201 and Fed. R. Civ. P. 57 that the Settlement Agreement was effectively terminated, and will cease effect as of September 6, 2016, except as to the provisions of the Settlement Agreement that survive termination.

## PRAYER FOR RELIEF

WHEREFORE, the Foundation respectfully demands:

A.    That the Court find that Defendants infringed the Foundation's copyrights in the Infringed Works and engaged in false designation of origin and false affiliation relating to the unauthorized giclees and Poster Giclee;

B.    That the Court find that the Foundation has a superior possessory right over the Original Works returned to the Foundation pursuant to the Court's June 7, 2016 Order to Show Cause;

C.    That the Court order Defendants to expunge any digital files of the Original Works to the extent Defendants' possession of such files is not permitted under the Settlement Agreement phase-out and post-termination periods;

D.    That the Court grant a permanent injunction providing that, pursuant to 17 U.S.C. § 502 and 15 U.S.C. § 1116(a), Defendants, their owners, partners, officers, directors, agents, servants, employees, representatives, licensees, subsidiaries, manufacturers and distributors, jointly and severally, be enjoined throughout the world from:

> i.    manufacturing, reproducing, selling, offering for sale, licensing, offering for license, promoting, advertising, distributing, donating, consigning, lending, and/or commercially exploiting in any manner, either directly or indirectly, the giclee or other photostatic reproductions of the Infringed Works, Posthumous Editions, the Wallpaper Images, the Poster Giclee, or any other works which Defendants are not entitled to reproduce other than in limited editions;

40

    ii.  using any false description, representation, or designation, or otherwise engaging in conduct that is likely to create an erroneous impression that Defendants' giclee or other photostatic reproductions of the Infringed Works, the Poster Giclee, or any other Hirschfeld works are endorsed by the Foundation, originate from the Foundation, or are connected in any way with the Foundation, including without limitation by referencing any seal or stamp (official or otherwise) of the Foundation or of Hirschfeld or by using the Hirschfeld name in connection with such unlawful statements;

    iii.  holding themselves out as authorized distributors of giclees or other photostatic reproductions of any of Hirschfeld's works, including without limitation the Infringed Works and Posthumous Editions; and

    iv.  secreting, hiding, destroying, mutilating, selling, donating, licensing, consigning, or otherwise disposing of or impairing the value of any of Hirschfeld's works in Defendants' possession, custody, or control, including without limitation, the Infringed Works and all the Original Works, or attempting to do or causing any third party to do any of the foregoing;

E.    That the Court issue an order requiring an accounting, and that all gains, profits and advantages derived by Defendants by their acts of infringement be deemed held in constructive trust for the benefit of the Foundation;

F.    That, pursuant to 17 U.S.C. § 503 and 15 U.S.C. § 1118, any and all giclee or photostatic reproductions of any Hirschfeld works, including without limitation the Infringed Works, and any originals or prints of the Infringed Works, in Defendants' possession, custody, or control which might, if sold, distributed for sale, or otherwise disposed of, violate the

injunction granted herein, be immediately seized and impounded, and delivered to the Court, or to some other person that the Court may designate, for destruction;

     G.     For Defendants' acts of copyright infringement, that the Foundation be entitled to recover all damages suffered as a result of Defendants' infringing acts and all profits derived from Defendants' wrongful acts in an amount to be determined at the trial of this action, as provided by 17 U.S.C. § 504(b);

     H.     That, pursuant to 15 U.S.C. § 1117, Defendants be awarded such damages available under the Lanham Act, including but not limited to, actual damages, Defendants' profits, treble damages, costs of suit and attorneys' fees;

     I.     That the Court order

          i.     that Defendants, their owners, partners, officers, directors, agents, servants, employees, representatives, licensees, subsidiaries, manufacturers and distributors, jointly and severally, be enjoined throughout the world during the pendency of this action and permanently thereafter from manufacturing, reproducing, selling, offering for sale, licensing, offering for license, promoting, advertising, distributing, donating, consigning, lending, and/or commercially exploiting in any manner, either directly or indirectly, the Original Works, pursuant to N.Y. CPLR 6301 & 7109;

     J.     That the Court find that Defendants have violated their fiduciary duty to the Foundation and are prohibited from continuing to act as the Foundation's agent;

     K.     That the Court find that Defendants are in material uncured breach of the aforementioned provisions of the Parties' Settlement Agreement;

L.    That the Court find that Defendants committed negligence in their treatment of the Foundation's valuable works of art;

M.    That the Court find that Defendants converted certain of the Foundation's property;

N.    That the Court issue a declaration that the Settlement Agreement has been validly terminated and is no longer of any force or effect as of September 6, 2016, except to the extent that certain terms survive termination;

O.    That the Court grant such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Foundation demands a trial by jury on all issues so triable in this action.

Dated: New York, New York
        July 26, 2016

COWAN, DeBAETS, ABRAHAMS
& SHEPPARD LLP


By: _____
        Eleanor M. Lackman
        Scott J. Sholder
        Brittany L. Kaplan
        41 Madison Avenue, 34th Floor
        New York, New York 10010
        Telephone: (212) 974-7474
        Facsimile: (212) 974-8474
        ELackman@cdas.com
        SSholder@cdas.com
        BKaplan@cdas.com

        *Attorneys for Plaintiff Al Hirschfeld Foundation*