USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/11/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

AL HIRSCHFELD FOUNDATION,

                         Plaintiff,

           -v-

THE MARGO FEIDEN GALLERIES LTD.
and MARGO FEIDEN,

                         Defendants.

------------------------------------------------------------- X

16 Civ. 4135 (PAE)

<u>OPINION AND ORDER</u>

PAUL A. ENGELMAYER, District Judge:

      On September 16, 2019, plaintiff the Al Hirschfeld Foundation (the "Foundation") and defendants the Margo Feiden Galleries (the "Gallery") and Margo Feiden (together with the Gallery, the "Galleries") submitted a joint letter addressing the scope of issues at the anticipated jury trial on the Gallery's counterclaim, which alleges a breach of the covenant of good faith and fair dealing. <i>See</i> Dkt. 293 ("Joint Ltr."). On review of the parties' arguments, the Court finds, for the following reasons, that (1) the Galleries' exclusive right to make "Retail Sales" under the 2000 Settlement Agreement (the "Agreement") extends only to sales made in New York and New Jersey, and (2) the Galleries' exclusive right to sell, on consignment, "Media Commissioned Works" is limited to (a) Media Commissioned Works, if created before the Agreement, that are included in the "Consignment Number," and (b) any Media Commissioned Works that were created after the Agreement.

**I.    Geographic Scope of the Agreement**

      The Agreement grants the Galleries certain exclusive rights to make "Retail Sales" of Al Hirschfeld's works. <i>See</i> Dkt. 261, Ex. 1 ("Agreement") ¶ 2(b). The Agreement defines "Retail

1

Sales" as the "commissioning, sale, and licensing or exhibition for sale and licensing" of Hirschfeld's works.[1] *Id.* The parties dispute the geographic scope of the Galleries' exclusive right to make such Retail Sales. The Foundation argues that the Galleries' exclusive right to make such sales is limited to New York and New Jersey, *see* Joint Ltr. at 2, while the Galleries argue that their exclusive rights extend worldwide, *see id.* at 5. The Court holds with the Foundation.

The Agreement includes a provision that specifically addresses geographic scope. *See* Agreement ¶ 2(c). Paragraph 2(c) provides that the Galleries have "the exclusive right to operate a gallery within the City and State of New York and the State of New Jersey ('Exclusive Territory')" for Retail Sales. *Id.* The same paragraph goes on to state that the Foundation cannot authorize Retail Sales by other entities within New York and New Jersey. *Id.* Paragraph 2(c) then addresses the rights of both the Galleries and the Foundation outside of New York and New Jersey. First, as to the Galleries alone, it limits their right to operate a gallery or other retail outlet outside of New York and New Jersey. *Id.* But then, as to both the Galleries and the Foundation, it states that "without limiting [the Foundation's] rights," "nothing in this paragraph 2(c) is intended to prevent or restrict [the Galleries] from engaging in Retail Sales" outside of New York or New Jersey, either at other galleries and retail outlets or on the Internet. *Id.*

The text of Paragraph 2(c) clearly indicates that the Galleries have the exclusive right to make Retail Sales within New York and New Jersey, but as to places outside of New York and

---

[1] The Agreement specifies that the term "Retail Sales" relates to Hirschfeld's "Works," which include "all of Hirschfeld's original works of art," Agreement at 1, and his "Derivative Works," which include "prints, lithographs, or other reproduction of Works," *id.* ¶ 2(b).

2

New Jersey, the Galleries' right to make Retail Sales is not exclusive.[2] Although Paragraph 2(c) permits the Galleries to make Retail Sales outside of New York and New Jersey, it imposes one express restriction—the ability of the Galleries to make these outside sales cannot limit the Foundation's "rights." *See id.* ("Without limiting [the Foundation's] rights under this Settlement Agreement . . ."). This text thus presupposes that the Foundation has certain rights outside of New York and New Jersey. Although the text does not explicitly state what these "rights" are, it, notably, does not anywhere impose any restriction on the Foundation's ability to make Retail Sales outside of New York and New Jersey; restrictions on Retail Sales inhibit the Foundation only in making or authorizing sales inside that territory. The fact that the Agreement precludes the Foundation from authorizing third parties from making Retail Sales within New York or New Jersey, but leaves the Foundation free to so authorize parties as to Retail Sales outside those two states, further confirms that the Foundation itself retained rights to make Retail Sales outside New York and New Jersey. The Court accordingly holds that, under the Agreement, the Foundation is not restricted in its ability to make Retail Sales outside of New York and New Jersey.

In an attempt to overcome the Agreement's text, the Gallery invokes the implied covenant of good faith and fair dealing. Joint Ltr. at 5. It asserts that the Foundation, by making Retail Sales both inside and outside of New York and New Jersey, has engaged in "improper competitive behavior," violating the covenant of good faith and fair dealing as a result. *Id.* It argues that its good faith and fair dealing claim, which must be "premised on a different set of facts from those underlying a claim for breach of contract," is not territorially limited. *Id.*

---

[2] For clarity's sake, outside of New York and New Jersey, the Galleries are not permitted to make any Retail Sales in a gallery or retail outlet that they own or operate, directly or indirectly. Agreement ¶ 2(c).

3

(quoting *Fleisher v. Phoenix Life Ins. Co.*, No. 11 Civ. 8405 (CM), 2012 WL 1538357, at *6 (S.D.N.Y. May 2, 2012)).

The Gallery is wrong on this point, too. Although breaches of contract and breaches of the implied covenant of good faith and fair dealing are distinct causes of action, an action for breach of the covenant of good faith and fair dealing is bounded by the parties' agreement. It cannot "imply obligations inconsistent with other terms of the contractual relationship." *Fleisher*, 2012 WL 1538357, at *6 (quoting *Manhattan Motorcars, Inc. v. Automobili Lamborghini*, 244 F.R.D. 204, 214 (S.D.N.Y. 2007)); *see also LJL 33rd St. Assocs. v. Pitcairn Properties Inc.*, 725 F.3d 184, 195 (2d Cir. 2013) ("[T]he implied covenant of good faith cannot create duties that negate explicit rights under a contract."); *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.*, 294 F.3d 383, 394 (2d Cir. 2002) ("[N]o obligation can be implied that would be inconsistent with other terms of the contractual relationship."). Further, the covenant "only applies where an implied promise is so interwoven into the contract 'as to be necessary for effectuation of the purposes of the contract.'" *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407 (2d Cir. 2006) (quoting *M/A–COM Security Corp. v. Galesi*, 904 F.3d 134, 136 (2d Cir. 1990)).

Here, insofar as Paragraph 2(c) of the Agreement gives the Foundation the right to make Retail Sales outside of New York and New Jersey, the Gallery cannot pursue a claim that sales by the Foundation outside of these two states breached the covenant of good faith and fair dealing. To do so would be to imply obligations inconsistent with the Agreement. It is immaterial that the Foundation's sales outside of the territory may have limited the revenue that the Galleries could have received from such sales. *See* Joint Ltr. at 5; *see also Galesi*, 904 F.3d at 136 ("[T]he implied covenant does not extend so far as to undermine a party's general right to

act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.") (internal quotation marks omitted). The Galleries took that risk in entering into an Agreement that permitted either the Foundation or third-party licensees to sell Hirschfeld Works in these geographic areas. And allowing a cause of action for breach of covenant as a means effectively to give the Galleries worldwide exclusive rights would frustrate the Agreement's purposes. Simply put, the Agreement gave the Galleries exclusive rights in New York and New Jersey while maintaining the Foundation's rights to engage in or authorize Retail Sales elsewhere. *See* Agreement ¶ 2(c). An action under the implied right of good faith and fair dealing may not disturb that contractual allocation of rights.

## II. Consignment Sales of Media Commissioned Works

The parties also dispute the extent of the Galleries' ability to serve as the exclusive representative of Hirschfeld's "Media Commissioned Works."

The Agreement defines "Media Commissioned Works" as "Works commissioned by third parties for publication." Agreement at 1. Paragraph 2(a)(iii) of the Agreement states that the Galleries "shall be the exclusive representative of Hirschfeld" for "sale on consignment of all Media Commissioned Works." *Id.* ¶ 2(a)(iii).[3] In an earlier paragraph related to sales on consignment, the Agreement makes the Galleries Hirschfeld's exclusive representative with respect to the sale of a specific number of works chosen by the Galleries; these works are known as the "Consignment Number." *Id.* ¶ 2(a)(i). In Paragraph 2(a)(iii), the Agreement clarifies that, with regard to the Galleries' rights as to sell the Media Commissioned Works, "all Media

---

[3] The Agreement's geographic restrictions on the Foundation's exclusive status with respect to Retail Sales of Works and Derivative Works in Paragraph 2(a)(c), however, also apply to the Galleries' Retail Sales of Media Commissioned Works, as Media Commissioned Works qualify as "Works and/or Derivative Works."

5

Commissioned Works created after the date of this Settlement Agreement shall not be included in but, instead, shall be in addition to the Consignment Number." *Id.* ¶ 2(a)(iii). The Foundation argues that the Galleries' right to sell Media Commissioned Works under Paragraph 2(a)(iii) is limited to works that are part of the Consignment Number, as described in Paragraph 2(a)(i). *See* Joint Ltr. at 2. In response, the Gallery states that the "vast majority of original Hirschfeld works are Media Commissioned works," and the Galleries were the "worldwide agent" for such works, implying that the Media Commissioned Works are not limited by the Consignment Number. *See id.* at 5.

The text of the Agreement does not make immediately obvious the extent to which the Agreement's reference to the consignment sale of Media Commissioned Works is limited, if at all, by its earlier definition of the Consignment Number. The lack of clarity stems from the fact that the Galleries' right to exclusive representation of Hirschfeld in the sale of Consigned Works and in the sale on consignment of Media Commissioned Works are addressed in two separate paragraphs of the Agreement. *See* Agreement ¶ 2(a)(i) (Consigned Works); ¶ 2(a)(iii) (Media Commissioned Works).

However, close examination of Paragraph 2(a)(iii) provides the answer. This paragraph, which grants the Galleries the exclusive right to sell Media Commissioned Works "on consignment," specifies that Media Commissioned Works created by Hirschfeld *after* the Agreement took effect were not to be included in the Consignment Number but instead to be considered in addition to the Consignment Number. *Id.* ¶ 2(a)(iii). This implies that Media Commissioned Works created *before* the Agreement were to be included in the Consignment Number, meaning the Galleries would have to designate particular Media Commissioned Works as falling within the specified number of Consignment Works in order to have exclusive rights

over their sale. As a result, the Galleries' right to sell Media Commissioned Works on consignment depends on when the works were created. If they were created before the Agreement, then the Media Commissioned Works at issue must fit within the Consignment Number. If they were created after, then the Consignment Number restriction does not apply, and the Galleries have the exclusive right to sell those Media Commissioned Works on consignment.

Further, as both parties acknowledge, almost all of Hirschfeld's works qualify as Media Commissioned Works. *See* Joint Ltr. at 2, 5. Were the consignment sale of the Media Commissioned Works not limited, to an extent, by the requirements of the Consignment Number provision, the detailed restrictions provided by the Consignment Number provision would not provide any realistic limitation on the Galleries' consignment sale rights. The parties could not have intended Paragraph 2(a)(iii) to have that effect.

## CONCLUSION

For the foregoing reasons, a jury trial on the Gallery's counterclaim will be limited to sales made by the Foundation within New York and New Jersey. To the extent the Gallery is relying on sales of Media Commissioned Works to support its counterclaim, it will be limited to sales by the Foundation of either (a) Media Commissioned Works created before the Agreement that were within the Consignment Number, or (b) Media Commissioned Works created after the Agreement.

The Court directs counsel to submit a detailed Joint Pretrial Order, consistent with this ruling and consistent with the Court's Individual Rules governing jury trials. The Joint Pretrial Order shall be due Friday, October 25, 2019. At the close of the hearing on damages scheduled

7

for Wednesday, October 30, 2019, the Court will review the Joint Pretrial Order in detail with counsel, and set a trial date.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: October 10, 2019
      New York, New York