USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/7/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

AL HIRSCHFELD FOUNDATION,

                      Plaintiff,

             -v-

THE MARGO FEIDEN GALLERIES LTD. and
MARGO FEIDEN,

                      Defendants.

-----------------------------------------------------------------------X

16 Civ. 4135 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Following the resolution, on motions for summary judgment, of various claims brought by plaintiff the Al Hirschfeld Foundation ("AHF") and, in bench hearings, of the money damages due to AHF on its meritorious claims, one claim in this case remains to be tried: the counterclaim by defendant Margo Feiden Galleries Ltd. ("MFG") for breach of the implied covenant of good faith and fair dealing.[1]  In its decision of October 11, 2019, the Court resolved the parties' legal disputes as to the scope of that counterclaim.  Dkt. 299 ("Oct. 11, 2019 Op."). This order resolves motions *in limine* governing evidence to be received at trial on that counterclaim.

"The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial. . . . Evidence

---

[1] While MFG's owner and proprietor Margo Feiden is a co-defendant in this broader litigation and has represented herself *pro se*, Ms. Feiden is not a party to this counterclaim, which was brought by MFG alone.  Therefore, at trial, litigation on behalf of the counterclaim plaintiff, MFG, is to be handled exclusively by counsel for MFG.

should not be excluded on a motion *in limine* unless such evidence is clearly inadmissible on all potential grounds." *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 257 (S.D.N.Y. 2015) (internal quotation marks and citations omitted). A court's ruling on such a motion is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in [a party's] proffer." *Luce v. United States*, 469 U.S. 38, 41 (1984).

These motions *in limine* turn largely on the application of Federal Rules of Evidence 401 and 403. Rule 401 defines evidence as "relevant" if it is material evidence having "any tendency to make a fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 403 authorizes a court to exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

**1.** *Testimony of Louise Hirschfeld Cullman*: AHF first moves to preclude MFG from calling Louise Hirschfeld Cullman as a witness at trial. *See* Dkt. 323 ("AHF Witness MIL") at 4–6; *see also* Dkt. 338 ("AHF Reply") at 4–6. Ms. Hirschfeld Cullman is the widow of artist Al Hirschfeld, whose works are the subject of the 2000 Settlement Agreement (the "Agreement") between AHF and MFG to which AHF's claims and MFG's counterclaims of breach relate. *See* Dkt. 261, Ex. 1 ("Agreement"). Ms. Hirschfeld Cullman is also the former president of AHF. AHF seeks to preclude this testimony on the grounds that (1) MFG, despite noticing Ms. Hirschfeld Cullman's deposition, ultimately did not take this deposition, and (2) AHF is skeptical that Ms. Hirschfeld Cullman has relevant testimony to offer pertinent to the narrow issues in dispute on the counterclaim. *See* AHF Witness MIL at 4–6.

The Court denies this motion *in limine*. There is no requirement that, to testify at trial, a witness must previously have been deposed. And there are plausible explanations why MFG might have decided not to depose Ms. Hirschfeld Cullman other than that her testimony was irrelevant, including to economize on cost. And MFG proffers that Ms. Hirschfeld Cullman, as AHF's then-president, was not only a primary point of contact at AHF for MFG, but also may have direct knowledge of "Retail Sales" by AHF of Hirschfeld "Works and/or Derivative Works" in violation of the provisions of the Agreement that gave MFG the exclusive right to sell such works in the "Exclusive Territory" of New York and New Jersey.[2] *See* Dkt. 334 ("MFG Opp.") at 4; *see generally* Feiden Decl.; *see also* Agreement at 1 (Works), ¶ 2(b) (Derivative Works and Retail Sales), ¶ 2(c) (Exclusive Territory). On the present record, the Court cannot reliably determine whether or not Ms. Hirschfeld Cullman in fact has relevant such evidence. The Court will not preclude Ms. Hirschfeld Cullman's testimony based on AHF's assertion that any testimony she might give would necessarily be irrelevant.

However, the Court is acutely aware of the potential for confusion, delay, and unfair prejudice that MFG's bid to call Ms. Hirschfeld Cullman at trial presents. The Court will not permit MFG to use Ms. Hirschfeld Cullman's testimony to probe issues relevant to claims in the case that have already been resolved. The Court will also not permit MFG to use this testimony vexatiously, a risk the Court perceives as real given the evident antagonism between MFG's principal, Margo Feiden, and various officials of AHF. The Court accordingly will strictly limit

---

[2] To be sure, to the extent that MFG proffers that Ms. Hirschfeld Cullman could testify to AHF's alleged sale of "Consigned Works," *see* Agreement ¶ 2(a)(i), at an exhibition in St. Louis, Missouri, *see* Dkt. 335 ("Feiden Decl.") ¶¶ 4–7, such sales by AHF would not violate the Agreement, as they are not barred by the Agreement's geographic exclusivity provision. *See* Agreement ¶ 2(c); *see also* Oct. 11, 2019 Op. at 1–5 & n.3 (interpreting that provision). The Court discusses the applicability of the geographic provision to Retail Sales of Consigned Works more fully below.

3

questioning by MFG's counsel of Ms. Hirschfeld Cullman to areas relevant to the surviving counterclaim and will not hesitate to terminate such questioning in the event that it repeatedly strays into extraneous areas.

  **2.** ***Testimony of Lynn Surry, David Leopold, and Lee Snow***: AHF next moves to preclude MFG from calling, on its case, AHF president Lynn Surry, AHF creative director David Leopold, and AHF corporate counsel Lee Snow. *See* AHF Witness MIL at 6–8; AHF Reply at 7–8. AHF's primary argument is that AHF will make these witnesses available for cross-examination. *See* AHF Witness MIL at 7–8. AHF's secondary argument is that these witnesses would needlessly lengthen trial. *See id.*

  The Court denies this motion. On the claim to be tried, MFG is the plaintiff. As such, MFG is entitled to call the witnesses of its choosing, including adverse witnesses affiliated with AHF. AHF has no right to insist that these party witnesses first be called on AHF's defense case. The Court is, however, respectful of AHF's goal of assuring that these witnesses not be called on both the plaintiff's and defense's case. Accordingly, should MFG call these witnesses, the Court will give AHF latitude in its questioning on cross-examination to exceed the subject-matter bounds of the witness's direct-examination testimony, and will give MFG corresponding latitude as to the scope of any redirect examination. As to the length of trial, the Court expects counsel for all parties to conduct witness examinations that are tightly focused on the narrow matters at issue. On that premise, the Court is unpersuaded, on the present record, that calling these multiple AHF personnel will needlessly elongate the trial.

  There is, however, a caveat, as to Mr. Snow. AHF does not appear to dispute that Ms. Surry and Mr. Leopold have at least potentially relevant testimony to offer. AHF, however, questions whether Mr. Snow would have relevant testimony to offer, were the Court to grant

AHF's separate motion to exclude AHF's tax returns, which Mr. Snow would apparently have been qualified to authenticate. *See id.* As set out below, the Court is excluding those tax returns. MFG proffers that Mr. Snow, who testified in deposition discovery as a Rule 30(b)(6) witness for AHF, separately can testify to AHF's "sales of art and sources of revenue." MFG Opp. at 5. From this generic proffer, however, it is not clear whether Mr. Snow can concretely testify to sales of art in breach of the exclusivity provision of the Agreement. The Court directs counsel for MFG to submit, within one week of this decision, a sworn declaration attesting to the specific areas of admissible direct testimony that Mr. Snow, based on his deposition, can give on MFG's counterclaim, and attaching, as substantiation, excerpts of Mr. Snow's deposition transcript. A letter response from AHF is due three business days later. In the event that the Court cannot find relevant admissible evidence that Mr. Snow can give at the upcoming trial, the Court would expect then to issue an order excluding Mr. Snow's testimony.

**3.** *AHF's tax returns*: AHF next moves to exclude from evidence several years of its annually filed tax returns. *See* Dkt. 324 ("AHF Tax Returns MIL") at 3–9; AHF Reply at 6–7. The Court grants this motion, under both Rule 401 and Rule 403.

As to Rule 401, MFG completely fails to explain how these tax returns would tend to establish sales of artwork by AHF in violation of the narrow areas on which, under the Agreement, MFG had a right to exclusivity. The tax returns instead aggregate AHF's revenues for the sale of art and do not break out sales, for example, by the name of the work of art, or— topical here—whether the art was sold in New York or New Jersey, the sole geographic area in which MFG had a contractual right to exclusivity. In these circumstances, AHF's tax returns would establish no more than the undisputed fact that AHF engaged in sales of art. That does

not, however, tend to establish that any such sales were of a type that the Agreement's exclusivity provisions prohibited AHF from making.

As to Rule 403, even if the tax returns had some nominal probative value, this probative value would be heavily outweighed by various countervailing factors. The returns would have a clear tendency to confuse the jury, to the extent that the references therein to revenue from art sales might be misunderstood to connote art sales in breach of the Agreement. And the inquiry into this area would needlessly cause trial delay. To the extent that MFG has adduced evidence of sales by AHF of Hirschfeld works in breach of the Agreement, the far more efficient—and far more probative—means to do so would consist of establishing those violative sales themselves, not by putting before the jury evidence of AHF's permissible sales.

**4.** *MFG's liability theories*: Finally, AHF moves to preclude MFG from pursuing at trial certain theories of liability with respect to the two aspects of conduct—AHF's alleged sale of Hirschfeld works in New York and New Jersey, and AHF's alleged sale of Consigned Works or post-2000 Media Commissioned Works[3]—as to which MFG claims a breach of the duty of good faith and fair dealing. *See* Dkt. 327 ("AHF Damages MIL") at 3–14; AHF Reply at 2–4.

---

[3] The Court's October 11, 2019 Opinion instructed that MFG, to support its counterclaim, could rely on evidence of three categories of conduct by AHF: (1) AHF's Retail Sales within New York or New Jersey, *see* Agreement ¶ 2(c); (2) AHF's sales of "Media Commissioned Works" created before the Agreement that fell within the "Consignment Number," *i.e.*, that were Consigned Works, *see id.* ¶ 2(a)(i), (iii); or (3) AHF's sales of Media Commissioned Works created after the Agreement, *i.e.*, post-2000, *see id.* ¶ 2(a)(iii). *See generally* Oct. 11, 2019 Op. The geographic exclusivity provision—barring AHF from authorizing retail sales in New York and New Jersey, but not otherwise—also applies to sales of Media Commissioned Works, which fall within the broader category of "Works." *Id.* at 5 n.3; *see also* Agreement at 1. However, MFG has not claimed that AHF sold any Hirschfeld works falling into the last category—Media Commissioned Works created after 2000—let alone identified any instances of such sales in the joint pretrial order. Accordingly, such sales will not be a subject of the upcoming trial. Instead, MFG may present evidence related to alleged sales in the first two categories: Retail Sales or sales of Consignment Works by AHF, in each case occurring within New York or New Jersey.

MFG's theories of breach are based on AHF's alleged (1) sale of works though the Doyle Auction House; (2) authorization of a sale to support the Woodstock Playhouse; (3) authorization of sales through the New York Historical Society; and (4) sales of Consigned Works, including online sales. *Id.* at 1. AHF argues that these theories of liability are untimely pursued. *Id.* at 3–8. MFG disputes these arguments. *See* MFG Opp. at 5–6. MFG further argues that AHF's motion is improperly brought as a motion *in limine*. *See id.* at 5.

AHF's motion is properly made at this stage. The Court, in fact, recognizing the iterative nature of MFG's factual bases for asserting that AHF is liable on the counterclaim, invited MFG's counsel to identify concretely the sales that it believed constituted a breach, and invited counsel for AHF to brief *in limine* whether certain sales or categories thereof by AHF could be held categorically to be permissible. The Court did so to assure that trial is streamlined and focused only on viable claims. *See* Oct. 30, 2019 Damages Hearing Tr. at 216–20. MFG has properly identified four categories of sales of Hirschfeld works that it plans to put at issue. And AHF's motion properly takes the Court up on its invitation to brief whether any of these categories can be eliminated as a potential source of liability.

AHF argues first that MFG untimely claimed that each of the following violated the Agreement's geographic exclusivity provision: (1) AHF's sale of works in 2011 through the Doyle Auction House in New York; (2) AHF's sale in 2014 of an individual print in Woodstock, New York; and (3) AHF's alleged authorization of sales of Hirschfeld derivative works through the New York Historical Society in 2015. *See* AHF Damages MIL at 3–5, 7–8. As to the Doyle Auction House sale and the Woodstock sale, AHF notes that MFG had previously raised both of these sales in a breach of contract claim, in which the Court ruled against MFG, and argues that MFG cannot relitigate these issues in its breach of covenant claim. *Id.* at 3–4. As to the New

7

York Historical Society sale, AHF argues that MFG had not raised the issue of improper authorization before the second round of summary judgment briefing and thus it would be "way too late" and prejudicial to AHF for such a theory to be considered now. *Id.* at 7.

The Court denies AHF's motion for relief on this ground. Although the Court's summary judgment decision closed off certain sales as bases for a claim by MFG of a breach of contract by AHF, that decision explicitly held that MFG's claim that these sales had breached the covenant of good faith and fair dealing was preserved for trial. Dkt. 282 at 32–34. And AHF admittedly had notice of all three sales, including the New York Historical Society sale, from prior summary judgment briefing. AHF is therefore is not unduly prejudiced by MFG's reliance on such sales in support of the counterclaim.

AHF separately argues on the merits its view as to why these three categories of sales were permissible under the Agreement. *See* AHF Damages MIL at 8–9, 11. For example, AHF discounts as unpersuasive MFG's arguments for inferring that AHF was a party to the 2011 sale of Hirschfeld works via the Doyle Auction House. *Id.* at 11. And AHF factually distances itself from the sales at the New York Historical Society. *See id.* at 9–11. AHF's factual arguments as to these sales may ultimately carry the day. On the Court's review, however, AHF's arguments are properly directed to the trier of fact, insofar as AHF essentially asks the Court to credit as truthful AHF's version of the events surrounding these sales. While the Court will ultimately examine the competent evidence received at trial to determine whether the evidence as to each category of sales can support MFG's claim of breach as a matter of law, AHF's pretrial proffers are insufficiently definitive to empower the Court, prior to trial, to eliminate these sales as potential areas of liability.

AHF separately seeks to preclude claims by MFG based on AHF's alleged sale of Consigned Works, including sales through AHF's online store. AHF argues that it was permitted to reclaim any Consigned Work and to sell such a work outside of New York and New Jersey. *See* AHF Damages MIL at 6, 13. MFG responds that any sale by AHF of the Consigned Works would violate the Agreement, implying that the geographic exclusivity provision does not apply to Consigned Works. *See* MFG Opp. at 8. The Court agrees with AHF. The Court will preclude MFG from pursuing a theory of liability based on Consigned Works and/or on online sales.

First, AHF had the contractual right to reclaim Consigned Works from MFG. The Agreement states that Hirschfeld, and thus AHF as his successor-in-interest, had "the right to determine in his sole and absolute discretion that a particular Work shall no longer be a Consigned Work or that a particular work not previously designated as a Consigned Work shall be a Consigned Work," subject only to Feiden's, and therefore MFG's, "right to the Consignment Number." Agreement ¶ 2(a)(i). Further, the Agreement states that Hirschfeld retained the rights not expressly granted to Feiden, including the right of "unrestricted access to, and the right to possess, all unsold Consigned Works." *Id.* ¶ 6(h)(vii). Therefore, as long as AHF respected MFG's right to a specific number of works—up to 250 after Hirschfeld's death, *id.* ¶ 2(a)(i)—AHF could reclaim specific Consigned Works as it wished.

Once AHF reclaimed a Consigned Work, it had the ability to sell that work subject only to the Agreement's geographic exclusivity provision. As discussed extensively in the Court's October 11, 2019 Opinion, that provision prevents AHF from authorizing "Retail Sales of Works/Derivative Works by persons other than Feiden at any location within the Exclusive Territory," *i.e.*, within New York or New Jersey. Agreement ¶ 2(c). Consigned Works are a subset of unsold "Works." *See id.* ¶ 2(a)(i). Consequently, the Court's reasoning from its

9

October 11, 2019 Opinion applies here: While AHF was not permitted to engage in Retail Sales of Consigned Works in New York or New Jersey, it was permitted to do so elsewhere. *See* Oct. 11, 2019 Op. at 1–5. AHF proffers that no sales of Consigned Works occurred within the New York or New Jersey during the life of the Agreement. *See* AHF Damages MIL at 6, 13–14; *see also* Dkt. 328 ("Leopold Decl.") ¶ 12. And MFG has not proffered, in the joint pretrial order or otherwise, evidence of AHF's sale of these works occurring within the Exclusive Territory during the term of the Agreement. Accordingly, the Court will preclude evidence related to the sale of Consigned Works.

Second, as to online sales specifically, AHF also proffers that no online sales of Consigned Works took place within New York or New Jersey during the term of the Agreement. *See* Leopold Decl. ¶ 12. And indeed, such sales could not have taken place during the term of the Agreement, because, as appears to be undisputed, the online store was opened after AHF served the notice of termination of the Agreement, *see id.*, which termination the Court has upheld. In fact, AHF proffers that no sales of Hirschfeld works occurred online until December 2016, months after the Agreement was terminated, and there were no sales in New York until April 2017. *Id.* In any event, although the Agreement is less than fully pellucid on his point, the Court is unpersuaded that—even if AHF had engaged in online sales prior to the Agreement's termination—the geographic restriction would have limited AHF's permissible online sales. While the geographic provision grants MFG exclusivity for Retail Sales in New York and New Jersey and prevents AHF from authorizing such sales there, the provision also expressly states that it is not intended to restrict MFG's Retail Sales "(i) at galleries or other retail sales outlets *outside of the Exclusive Territory* and/or (ii) on the Internet, World-Wide Web or other forms of electronic communication now in existence or hereinafter developed." Agreement ¶ 2(c)

(emphasis added). Because the Agreement, in addressing MFG's rights, does not impose the same qualification—that sales be "outside of the Exclusive Territory"—on Internet sales as it does on sales from brick-and-mortar stores, an inference arises that the geographic provision was never intended to restrict AHF's online sales either. And the Court, in the context of this breach of good faith and fair dealing claim, is unprepared to infer such a limit that could create new, unbargained-for rights. *See Don King Prods., Inc. v. Douglas*, 742 F. Supp. 741, 761 (S.D.N.Y. 1990) ("The implied covenant does not . . . operate to create new contractual rights; it simply 'ensures that parties to a contract perform the substantive, bargained-for terms of their agreement' and that parties are not unfairly denied 'express, explicitly bargained-for benefits.'" (citation omitted)).

For these independent reasons—that AHF's online sales post-dated the termination of the Agreement and that the Agreement did not clearly place a geographic bar on such sales—the Court at trial will preclude evidence and arguments about AHF's online sales generally.

The Court, accordingly, denies AHF's motion *in limine* to the extent AHF seeks to exclude evidence as to any of the three categories of sales alleged to have taken place in New York or New Jersey (the Doyle Auction House, the Woodstock, and the New York Historical Society sales). Each category may properly be pursued at trial by MFG. The Court expects that MFG will focus its trial proof tightly on these areas and will come prepared at trial to adduce competent, admissible evidence as to these areas. The Court, however, grants AHF's motion to preclude evidence of, and arguments about, sales of Consigned Works and online sales.

## CONCLUSION

For the reasons set out above, the Court grants in part and denies in part AHF's motions *in limine*. The Clerk of Court is respectfully directed to terminate the motion pending at docket 322. The Court's staff will be in touch with counsel shortly to schedule a trial date.

SO ORDERED.

_Paul A. Engelmayer_
Paul A. Engelmayer
United States District Judge

Dated: February 7, 2020
       New York, New York