USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/7/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                      :

AL HIRSCHFELD FOUNDATION,                :

                                           Plaintiff,       :           16 Civ. 4135 (PAE)

                                                               :           OPINION & ORDER

                                 -v-                                     :

THE MARGO FEIDEN GALLERIES LTD. and   :
MARGO FEIDEN,

                                            Defendants.    :
-----------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        This decision resolves a motion by plaintiff the Al Hirschfeld Foundation ("AHF") to find defendants Margo Feiden Galleries Ltd. ("MFG"), an art gallery, and Margo Feiden ("Feiden"), its proprietor (together, "defendants"), in civil contempt for violating various court orders, and, as a remedy, to impose monetary sanctions to make AHF whole for the fees and costs it incurred as a result of these violations.

        For the reasons that follow, the Court finds defendants in civil contempt and imposes compensatory sanctions of $23,000 on defendants.

**I.      Background**

        At issue here are violations of court orders arising from defendants' failures (1) to reveal MFG's continued possession of multiple drawings by the fabled late cartoonist Al Hirschfeld, which AHF had consigned to MFG pursuant to a Settlement Agreement; (2) to return these works to AHF as ordered by the Court following the termination of that Agreement; and (3) to produce complete records relating to MFG's sale of consigned works, as AHF's discovery requests demanded.

These violations came to light this autumn. On May 8, 2019, the Court issued an opinion and order granting partial summary judgment to AHF on its claims of conversion with respect to a set of Hirschfeld drawings that AHF had consigned to MFG but for which MFG had been unable to account.[1] *See* Dkt. 282 ("May 8, 2019 SJ Op.") at 8–26. As to seven of the missing drawings, the Court held, there was a need for a factual determination as to the value of these works, to enable the Court to determine damages. *See id.* at 40. The Court scheduled an evidentiary hearing for this purpose for October 30, 2019, and directed that a joint pretrial order be submitted on October 23, 2019. Dkts. 294, 297. On October 24, 2019, however, on the brink of the evidentiary hearing, MFG revealed that it had recently found four of the missing works on its premises, along with documentary records of Feiden's sale, in October 2016, of a fifth.[2] *See* Dkt. 303.

---

[1] This was the second ruling of this nature. On November 1, 2017, the Court had granted partial summary judgment to AHF with respect to a larger set of missing consigned drawings. *See* Dkt. 188. On July 25, 2018, following an evidentiary hearing to which the parties consented as a means of fixing damages, the Court tabulated the damages due AHF as a result of MFG's conversion of these drawings. *See* Dkt. 234.

[2] MFG initially reported that it had found four works—AHLY No. 133, "Of Mice and Men"; AHLY No. 294, "Joseph Wiseman"; No. 2470, "Tallulah Bankhead"; and No. 3932, "Mr. President"—and that a fifth—No. 3918, "Pauline Kael"—had been sold. *See* Dkt. 303 at 1. In addition, after MFG sent its initial report on the missing works and before the October 30, 2019 damages hearing, it found another work: No. 105, "Winterset." *See* Dkt. 314 ("Nov. 22, 2019 Damages Op.") at 4. In the damages hearing, it became clear that the "Tallulah Bankhead" that had been retrieved was not actually the consigned work, but a different version with a different inventory number (No. 2471), and that the "Mr. President" that MFG had was in fact a version from Feiden's personal collection. *See id.* at 3–4. The whereabouts of the No. 2470, "Tallulah Bankhead," and the No. 3932, "Mr. President," remain unknown. *Id.* at 4.

Following the hearing, the Court, on November 22, 2019, resolved the damages due to AHF for the conversion of the works at issue. *See* Nov. 22, 2019 Damages Op. at 13. The Court noted that AHF had, separately, asked the Court to impose sanctions against defendants. *See id.* at 3 n.5. Specifically, AHF sought sanctions for defendants' failure to reveal earlier that they in fact possessed some of the missing consigned works; for defendants' failure to return those works to AHF; for defendants' November 2016 sale of "Pauline Kael" in violation of a court order preventing such a sale; and for defendants' failure to produce documents relating to that sale. *See* Dkt. 305 ("AHF Sanctions Letter"). In its decision, the Court noted that it had, at the damages hearing, set a briefing schedule for the sanctions motion. Nov. 22, 2019 Damages Op. at 3 n.5 (citing AHF Sanctions Letter); *see also* Dkt. 310 (order setting briefing schedule as to sanctions).

Consistent with that schedule, on November 26, 2019, AHF moved for a finding of civil contempt and imposition of corresponding sanctions, Dkt. 317, submitting a memorandum of law, Dkt. 318 ("AHF Mem."), and supporting declarations, *see* Dkt. 319 (declaration of Scott J. Sholder, Esq.) ("Sholder Decl."); Dkt. 320 (declaration of David Leopold) ("Leopold Decl.").[3]

---

In sum, the status of the seven missing works is as follows: MFG found three works that had been stored in the gallery, "Of Mice and Men," "Joseph Wiseman," and "Winterset" (together, the "'Lively Years' drawings"). It never found, but offered AHF replacement versions of, "Tallulah Bankhead" and "Mr. President." AHF accepted each of these five works as "full[] remediation" for the corresponding missing five works. *Id.* (quoting Oct. 30, 2019 Damages Hearing Tr. at 27). "Pauline Kael" was sold in November 2016. *Id.* at 7. And lastly, "The Many Faces of Bob Hope" remains missing, although Feiden has represented that she gave it to a press agent. *Id.* at 4–5.

[3] In addition to the potential for a civil contempt finding, AHF articulated two additional bases for finding defendants' conduct sanctionable: under the Court's inherent powers, and under Federal Rule of Civil Procedure 37. *See* AHF Mem. at 3–4. Because the Court is persuaded by AHF's first ground—that defendants should be found in civil contempt—it has no occasion to address the other two suggested grounds.

3

On December 17, 2019, defendants opposed that motion, submitting a memorandum of law, Dkt. 332 ("MFG Mem."), and a supporting declaration, *see* Dkt. 333 (declaration of Siddartha Rao, Esq.) ("Rao Decl."). On January 6, 2020, AHF filed a reply memorandum in support of its motion, Dkt. 340 ("AHF Reply"), and supporting declarations, *see* Dkt. 341 (reply declaration of Scott J. Sholder, Esq.) ("Sholder Reply Decl."); Dkt. 342 (reply declaration of David Leopold).

## II.   Discussion

A court may hold a party in civil contempt for failure to comply with a court order if "(1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner." *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016); *see also N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1351–52 (2d Cir. 1989) (holding defendants in contempt where this test was satisfied); *Telanor Mobile Commc'ns AS v. Storm LLC*, 587 F. Supp. 2d 594, 615–17 (S.D.N.Y. 2008), *aff'd*, 351 F. App'x 467 (2d Cir. 2009) (same and rejecting inability to comply defense). The Court does not need to find that the party's violation of the order was willful. *Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Tech., Inc.*, 369 F.3d 645, 655 (2d Cir. 2004) ("*Paramedics*"); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989). Further, "[t]he fact that the prohibited act was done inadvertently or in good faith . . . does not preclude a citation for civil contempt, for the sanction is remedial in nature." *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 128 n.2 (2d Cir. 1979).

Civil contempt sanctions may serve either or both of two purposes: They may be coercive, to secure compliance with court orders, or they may be compensatory, to make whole the party who has been wronged. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947); *see also Paramedics*, 369 F.3d at 657–58; *N.Y. State Nat'l Org.*

4

*for Women*, 886 F.2d at 1351. Civil contempt differs from criminal contempt, because criminal sanctions are punitive in nature, while civil sanctions are not. *See Paramedics*, 369 F.3d at 657 ("Criminal contempt is typically imposed 'to punish the violation and vindicate the court's authority.'" (quoting *Universal Studios, Inc. v. N.Y. Broadway Int'l Corp.*, 705 F.2d 94, 96 (2d Cir. 1983)); *see also A.V. By Versace, Inc. v. Gianni Versace S.p.A.*, 446 F. Supp. 2d 252, 258 (S.D.N.Y. 2006) (explaining difference between civil and criminal contempt). In short, "[i]t is well settled . . . that civil contempt proceedings must be 'remedial and compensatory, and not punitive.'" *Manhattan Indus.*, 885 F.2d at 5 (quoting *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467, 469 (2d Cir. 1958)).

The compensatory goal of civil contempt sanctions is "met by awarding to the plaintiff any proven damages." *Weitzman v. Stein*, 98 F.3d 717, 719 (2d Cir. 1996); *see also id.* at 720 ("It is error to withhold damages that are supported by the record."). This is because the purpose of compensatory sanctions is "to make reparation to the injured party and restore the parties to the position they would have held had the [order] been obeyed." *Medina v. Buther*, No. 15 Civ. 1955 (LAP), 2019 WL 581270, at *26 (S.D.N.Y. Feb. 13, 2019) (quoting *Vuitton et Fils*, 592 F.2d at 130). The court may, however, serve either goal—the coercive or the compensatory—by awarding attorneys' fees and costs to a contempt victim. *Weitzman*, 98 F.3d at 719; *see also Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99 Civ. 9307 (JFK), 2003 WL 22047843, at *2–3 (S.D.N.Y. Aug. 29, 2003) (awarding compensatory fees for plaintiff's investigation of defendant's failure to comply with injunction). *But cf. Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 642 F. Supp. 2d 276, 299 (S.D.N.Y. 2009) (limiting fees to those accrued in litigating contempt proceeding, as opposed to all litigation activity). Although helpful, a finding of willfulness is not necessarily a prerequisite to awarding

fees and costs. *See Weitzman*, 98 F.3d at 719; *Chevron Corp. v. Donziger*, 384 F.3d 465, 506 (S.D.N.Y. 2019).

In considering AHF's claims of contempt-worthy conduct here, the Court has reviewed the entire record of this long-running case, which discloses a regrettable history of defendants' noncompliance or delayed compliance with discovery and other orders. These include orders and discovery demands by AHF relating to such works, as ably summarized by AHF in its brief. *See* AHF Mem. at 4–11.

As to the specific controversy here, the Court finds civil contempt sanctions warranted. That is because defendants egregiously failed to comply with three clear court orders (or sets thereof) relating to the missing consigned works.

First, as to the return of the physical drawings themselves, several clear and unambiguous orders by the Court required defendants to return the consigned drawings to AHF. For example, on December 5, 2017, after the termination of the parties' Settlement Agreement, the Court ordered defendants to "return all consigned works" to AHF by December 17, 2017. Dkt. 194 at 1 ("[T]he Court hereby orders that, by December 17, 2017, defendants return all consigned artwork to plaintiff. The parties do not dispute that, with the termination of the settlement agreement, the defendants are compelled to return the artwork consigned to them by the plaintiff. There is no reason for delay as to this task."). And in its second summary judgment opinion, the Court noted that while defendants claimed no longer to possess any of the consigned-but-unaccounted-for Hirschfeld works, "[in] the event the Galleries did continue to possess these works, such—independent of any breach of the Agreement—would violate the Court's Order . . . [directing] the Galleries to return to the Foundation all disputed works (listed by number) in the Galleries' possession." May 8, 2019 SJ Op. at 9 n.4. MFG's undisclosed,

continued retention of the three missing consigned drawings—the "Lively Years" drawings—breached these orders. MFG did not disclose its possession of these works, or return them to their rightful owner, AHF, until some 22 months after the Court's first order to this effect. MFG only did so after the Court had found defendants to have converted these drawings and after the parties were deep into briefing, and preparing, for an evidentiary hearing, as to damages with respect to these works.

Second, as to the production of records relating to consigned works, AHF's discovery demands repeatedly sought such records, including as to the sale of such works. *See, e.g.*, Sholder Decl. ¶ 2; Sholder Reply Decl., Ex. A ¶ 18 (November 7, 2016 document requests) (requesting "[d]ocuments sufficient to identify all income, payments, or other revenue received by [MFG] in connection with sales of Consigned Works from September 2000 to the present"). The Court adopted these outstanding discovery requests in orders directing MFG to comply. *See* Dkts. 119, 126 (court orders requiring MFG to respond to these requests). MFG's failure to produce documentary records in its possession reflecting its sale of the consigned work "Pauline Kael," which MFG recently disclosed occurred in November 2016, *see* Nov. 22, 2019 Damages Op. at 7–10, blatantly breached those orders.

Third, MFG's November 2016 sale of "Pauline Kael" violated a separate court order prohibiting MFG from unilaterally selling consigned works. On June 10, 2016, shortly after the start of this litigation, the Court issued a preliminary injunction that barred defendants from selling consigned works "except insofar as such activity is permitted in the Settlement Agreement." Dkt. 18 at 2. The Agreement, in turn, gives AHF the opportunity to approve the sale prices of Hirschfeld works consigned thereunder. *See* Dkt. 82-3 ("Settlement Agreement") ¶ 5(d)(i). In March 2017, the Court held that defendants had breached that term in connection

with their October 2016 sale of a different work ("The Sunshine Boys with Jack Klugman and Tony Randall"), which defendants had disclosed, post-sale, to AHF in November 2016. *See* Dkt. 72 at 1–2 (AHF's notice to Court of sale); Dkt. 132 at 2 (finding sale to have breached preliminary injunction). MFG's sale of "Pauline Kael" in November 2016 similarly violated the preliminary injunction.

The Court has carefully considered defendants' counter-arguments. *See generally* MFG Mem. at 6–22; Rao Decl. To the extent that defendants state or imply that under the Court's orders they were permitted (1) to sell, secretly and unilaterally, "Pauline Kael" in November 2016, *see* MFG Mem. at 7–8, 14; (2) to fail to produce the documentary records of this sale in discovery, including Feiden's emails with the buyer touting the drawing and quoting a price for it, *see id.* at 8–11, 15, 18–19; and/or (3) to refrain from disclosing the existence, and relinquishing custody, of the three missing "Lively Years" drawings that it reported possessing in late October 2019, *see id.* at 13–14, 16–17, 20, those arguments are frivolous. The Court summarily rejects them. [4]

Notably, defendants do not seriously claim to have been unable to comply with these orders. To be sure, defendants seek to mitigate these breaches. Principally, defendants note that, after the consigned works could not be accounted for, Feiden offered, as the damages hearing approached, to substitute for two of them "more valuable" Hirschfeld works from the MFG inventory or her personal collection. Dkt. 311 ("Feiden Decl.") ¶¶ 28, 33–34; *see also* Nov. 22, 2019 Damages Op. at 3–4 (describing substitution for drawings of "Tallulah Bankhead" and "Mr. President"); Def. Mem. at 11–12, 15, 19 (same). AHF, after examining the proposed

---

[4] AHF's briefs in support of civil contempt ably dismantle defendants' rationalizations for their non-compliance with the Court's orders. *See generally* AHF Mem. at 11–22; AHF Reply at 1–9.

substitute works at the outset of the October 30, 2019 hearing, agreed to accept two such works as compensation for two missing consigned works. *See* Nov. 22, 2019 Damages Op. at 3–4; *see also* Feiden Decl. ¶¶ 4(i), 24–34. Insofar as this agreement mooted the need for additional testimony at the hearing as to the valuation of those two missing works, defendants' offer did indeed limit the time and expense that AHF might thereafter have accrued litigating damages for the conversion of these two works.

But defendants' submissions do not disclose any inability to comply with these orders. On the contrary, compliance with the Court's orders—to produce responsive documents, to return consigned works in MFG's possession, and to refrain from unilaterally selling such works—was easily achievable. Three of the missing consigned works were found, and evidently were situated at all times, on MFG's business premises, a townhouse in the lower east side of Manhattan. *See* Nov. 22, 2019 Damages Op. at 3–4 (explaining that "Of Mice and Men," "Joseph Wiseman," and "Winterset" had been found). The records of the October 2016 sale of "Pauline Kael," which included emails between Feiden herself and the buyer, were found among MFG's records. *See id.* at 8–9. And defendant Margo Feiden, MFG's owner and founder, is, along with MFG, chargeable with the violations of these orders. She had personal knowledge of the works consigned to MFG and sold by MFG. Indeed, as the records relating to the sale of "Pauline Kael" reflected, Feiden personally negotiated and arranged that sale, following the Court's order barring MFG from doing so unilaterally. *See id.*; *see also* Dkt. 315-1 (invoices and emails related to sale of "Pauline Kael"). She has also actively participated in this litigation, representing herself *pro se* alongside MFG's retained counsel. Had MFG and Feiden conscientiously attended to their legal obligations—to search carefully for, and produce, records responsive to plaintiffs' discovery demands; and to comply with court orders regarding the return

9

of the unsold Hirschfeld works consigned to MFG—they could easily have complied with the Court's orders. Defendants instead blatantly breached these orders.

As to the remedy for defendants' breaches, the Court's objective is to recompense AHF for the fees and costs that, but for these breaches, it would not have incurred. *See, e.g.*, *Weitzman*, 98 F.3d at 719 (explaining compensatory goal of civil contempt sanctions); *Medina*, 2019 WL 581270, at *26 (same).

As to legal fees, AHF's outside counsel has chronicled his firm's work for AHF relating to the missing works, supported by appropriately redacted billing records of firm timekeepers. AHF seeks $34,800.91 in fees that it contends were incurred in connection with this project. Sholder Decl. ¶ 5. AHF's outside counsel represents that its fee requests excise work on separate projects relating to this litigation. *See id.* ¶¶ 6–8. Counsel also represents that the firm further reduced the fees incurred on litigation relating to the missing works to reflect that some of the firm's work on this project—that relating to the two unreturned works—would have been necessary regardless of defendants' breaches. *Id.* ¶ 9 (discounting for "The Many Faces of Bob Hope" and the still missing "Tallulah Bankhead," which have not been returned to AHF).

Although the Court respects counsel's rigorous efforts to calibrate fairly the proposed sanction, the Court's judgment is that further pruning is necessary to assure that its award is no greater than necessary. That is principally because counsel's timesheet entries reflecting work on this project are generally not keyed to specific missing consigned works, leaving it difficult for the Court to gauge how much such work would have been obviated by timely revelation of MFG's continued possession of the three missing "Lively Years" drawings and its sale of "Pauline Kael." Certain of counsel's efforts would have been necessary even had the conversion litigation and damages inquiry implicated fewer works. After close review, the Court's

judgment is that an award of $20,000 in fees is sufficiently conservative to assure that the award does no more than make AHF whole for the needless work occasioned by defendants' violations.

As to expenses, AHF seeks compensation for, first, the fees ($1,595.30) and travel and hotel expenses ($392.93) of its testifying expert at the damages hearing, Harry Katz. Leopold Decl. ¶¶ 13–14. However, AHF acknowledges that Katz was paid on a flat-fee basis, and that his testimony and travel would have been necessary even had fewer missing works been at issue. *See* AHF Mem. at 25; Leopold Decl. ¶ 14. The Court accordingly declines to compensate AHF for these outlays.

AHF separately seeks compensation for the work performed by AHF employees David Leopold and Katherine Eastman, who, Leopold attests, billed AHF on an hourly basis ($125/hour for Leopold and $22.50/hour for Eastman) for their work relating to missing works. Leopold Decl. ¶ 10. Such work included reviewing voluminous correspondence and other records to investigate MFG's claim—now shown to be false—that these works had been returned to AHF. *See, e.g.,* Leopold Decl. ¶¶ 8–9. Unnecessary work of this nature is properly compensable by MFG. Leopold and Eastman do not appear, however, to have maintained narrative time records that would permit the Court to closely tabulate the time spent on projects that, but for MFG's breaches, would have been unnecessary. *See id.* ¶ 12. Leopold estimates that $10,000 of the $14,750 of the fees that he and Eastman charged during the two years when missing works were at issue was spent on such projects. *Id.* ¶ 11. Because this claim is inherently incapable of neutral testing, however, it is particularly important that any estimate of such work be conservative. That is particularly so because some of the pair's work relating to missing consigned works would have been necessary even if MFG had timely revealed its possession or

11

sale of the five unreturned works. After close review, the Court's judgment is that assessing defendants $3,000 as compensation for these efforts is appropriate and not excessive.

The Court accordingly imposes sanctions for defendants' civil contempt totaling $23,000 These are to be paid by defendants (MFG and Feiden), not by MFG's counsel. The Court has closely reviewed defense counsel's declaration in opposition to the motion for sanctions. *See* Rao Decl. Drawing on that declaration and the Court's broader familiarity with this litigation, the Court is confident that the regrettable lapses here are dominantly, if not exclusively, attributable to MFG and Feiden, not to MFG's counsel.

## CONCLUSION

For the reasons set out in the foregoing, the Court holds MFG and Margo Feiden in civil contempt for their violations of multiple clear and unambiguous court orders. To compensate AHF for work caused by the violations of these orders, the Court orders these defendants to pay $23,000 in monetary sanctions. Defendants are to pay this sum to AHF by Friday, February 21, 2020. Counsel for MFG is to file a sworn declaration on the docket of this case by that date, attesting that this payment has been made.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 317.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: February 7, 2020
      New York, New York